## THE GUIDING STAR.[1]

(*Circuit Court, S. D. Ohio.*   October, 1883.)

1. ADMIRALTY JURISDICTION—COMPLETE RELIEF.

   The jurisdiction of a court of admiralty, in a proceeding *in rem* against a vessel to enforce liens thereon, is founded upon the maritime nature of the liens sought to be enforced: although, as to any surplus, having acquired jurisdic-tion, it will proceed upon principles of equity to dispose of the entire fund, awarding it to the owners, or those who may have succeeded to their rights.

2. MARITIME LIENS HAVE PRECEDENCE.

   In determining the order of priority among claimants, the first classification is into liens, maritime and non-maritime, the latter being postponed until after the satisfaction of the former.

[1] Reported by J. C. Harper, Esq., of the Cincinnati bar.

3. CONSTRUCTION CLAIMS—MORTGAGE, ETC., NON-MARITIME.

The contract for the construction of a steam-boat, and consequently all claims for materials furnished, labor performed, and money advanced in building a boat; a mortgage upon a steam-boat; and money advanced on the credit of the boat for its general purposes,—are all non-maritime in their character.

4. MONEY ADVANCED TO PAY OFF MARITIME LIENS.

Money advanced upon the credit of the boat, to pay off claims of a maritime nature, entitled to liens in admiralty, and actually used for that purpose, are entitled to the same rank in the distribution as the claims which were thus paid off.

5. HOME AND FOREIGN SUPPLY CLAIMS ENTITLED TO EQUALITY.

Claims for materials, supplies, and insurance, which have arisen at the home port, for which a lien is given by the local law, are entitled to the same footing, in the distribution, with similar claims arising in foreign ports.

*The General Burnside*, 3 FED. REP. 228, approved.

6. MARITIME CLAIMS—LIEN GIVEN BY STATE STATUTE—ADMIRALTY LAW GOVERNS.

In enforcing maritime liabilities, although the lien therefor may have been given by a state statute, a court of admiralty will be controlled entirely by the principles of the admiralty law, and not by any rule laid down by such state statute, or the state courts in construing it.

7. NON-MARITIME CLAIMS—STATE LAW GOVERNS—MORTGAGE—MONEY ADVANCED—CONSTRUCTION CLAIMS UNDER OHIO STATUTE.

In distributing the surplus, after the payment of claims of a maritime nature, the court acts as a court of equity and not of admiralty, and will follow the local statute as construed by the state courts. The statute of Ohio, as construed by the supreme court of that state, gives precedence to construction claims over a mortgage. No lien being given by the Ohio statute for money advanced, to build the boat, and for its general purposes, such claims are not entitled to share in the distribution.

In Admiralty. Appeal from the district court. Decision there reported in *The Guiding Star*, 9 FED. REP. 521, where the facts are more fully stated.

*Moulton, Johnson & Levy* and *W. H. Jones*, for libelants and sundry intervenors.

*Lincoln & Stephens, Perry & Jenney, C. K. Shunk, Follett, Hyman & Kelly,* and *Yaple, Moos & Pattison,* for other intervenors.

MATTHEWS, Justice. The questions of law arising upon the facts agreed upon and found in this case relate to the distribution among the creditors of the vessel having liens of the proceeds of its sale. The jurisdiction of the court, sitting in admiralty, is founded upon the nature of the liens sought to be enforced by its process, as maritime, although as to any surplus of the proceeds of sale remaining after satisfaction of all maritime liens, it will, having acquired jurisdiction as an admiralty court, proceed upon principles of equity to dispose of the entire fund, awarding it to the claimants, either as owners of the vessel or as having, either at law or in equity, by contract or liens, succeeded to the owners' rights. From the nature of the case, all such claims, being derived through the owner, and attaching only to his title and interest, are subordinate and subject to maritime liens, the latter attach to the vessel itself as an instrument of commerce, which, in its interest, is personified, and subjected to such liabilities, without regard to circumstances or questions of title or ownership.

In determining the order of priority among the several claimants, the first classification, therefore, is into liens, maritime and non-maritime, the latter being postponed until after satisfaction of the former. Among those thus postponed as non-maritime are the following:

(1) Those embraced in the fifth finding, for materials furnished and labor performed in building the steam-boat; the contract for construction being non-maritime in its character, although a statutory lien is given for liabilities arising thereon, by the local law of the port at which it was built. (2) The claim mentioned in the sixth finding, upon the mortgage given to secure a loan of money to the owner. (3) The claims embraced in the ninth finding, for money advanced to build the said steam-boat. (4) The claims embraced in the tenth finding, for money advanced on the credit of the steamboat for the general purposes of the boat; for although it appears that a portion of these advances were used in paying claims which were maritime in their nature, and entitled to be enforced in admiralty as liens, nevertheless, that portion is undetermined, and, not being ascertained, no decree therefor could be framed.

Of the remaining claims, the *status* of the following is not subject to any question:

(1) The claim stated in the seventh finding, for money advanced the boat at Cincinnati, upon its credit, to pay the wages of the crew, and used for that purpose. The money advanced and used for such a purpose takes the same rank in the distribution as would the wages due to the crew, if unpaid, and, according to merit, is entitled to be first paid after the costs of the suit. (2) The claims embraced in the eighth finding, for money advanced the boat at New Orleans, upon its credit, for the purpose of paying her crew and for supplies, and used for that purpose; and those embraced in the second finding, for repairs, materials, and supplies furnished the steam-boat upon her credit in ports and places out of the state of Ohio, in which was her home port.

As to these claims, it is not disputed that they are maritime in their nature, and that the maritime law secures them by a lien enforceable in admiralty.

This leaves for consideration the claims enumerated in the third finding, for repairs, materials, and supplies furnished said steamboat upon her credit in her home port, and in the fourth finding, for premium notes on time-policies of insurance taken out at her home port. These two descriptions of claims are maritime in their nature, as founded upon maritime contracts, enforceable in admiralty courts by process *in personam*, but not invested, by the maritime law of this country, with a lien upon the vessel, enforceable as such by admiralty process *in rem*. But a lien upon the vessel, in respect to them both, is given by the local law of her home port; a statute of Ohio, "to provide for the collection of claims against steam-boats and other water-crafts, and authorizing proceedings against the same by name," (Rev. St. Ohio, § 5880,) enacting as follows:

"That all steam-boats and other water-crafts, of twenty tons burden and upwards, navigating the waters within or bordering upon this state, shall be liable, and such liability shall be a lien thereon, for all debts contracted on account thereof by the master, owner, steward, consignee, or other agent, for materials, supplies, or labor in the building, repairing, furnishing, or equip-

ping the same, or for insurance, or due for wharfage, and also for damages arising out of any contract for the transportation of goods or persons, or for injuries done to persons or property by such craft, or for any damages or injury done by the captain, mate, or other officer thereof, or by any person under the order or instruction of either of them, to any person who may be a passenger or hand on such steam-boat or other water-craft at the time of the infliction of such damage or injury."

In respect to the claims which depend upon this statute for their lien upon the vessel itself, or its proceeds, it is claimed that the lien, being local and statutory, and not given by the maritime law, is subordinate and inferior in rank to the lien given by the maritime law to claims of similar nature, but arising in foreign ports. This view, however, was not adopted by the district judge in framing the decree in this cause, the subject of the present appeal. Following the decision of the circuit judge of this circuit in the case of *The General Burnside*, 3 FED. REP. 228, he held that such claims as are maritime in their nature, and subject-matter, for which the state law has given a lien, including supplies, repairs, and insurance, furnished at the home port, were of equal dignity with liens for advances for similar purposes created by the general admiralty law, and should be treated in the distribution as composing a part of the same class. *The Guiding Star*, 9 FED. REP. 521.

In my opinion this ruling is correct, and I adopt it. I am not able, notwithstanding numerous opinions to the contrary in other courts of equal authority, to discover solid ground for the distinction contended for. The claims are in their character, both classes being maritime, alike, and of equal merit. The lien is given by the law, and, although the source of one is the maritime law, and that of the other a local statute, nevertheless they are both so distinctively of a maritime nature that they are exclusively cognizable in the admiralty courts.

The statute which gives a lien to secure the claims of the domestic creditor, does not recognize any such distinction; and the admiralty rule which authorizes its enforcement in the admiralty courts, provides equally for all suits by material-men for supplies or repairs or other necessaries, without any distinction in consequence of their claims arising in a foreign or home port. In both cases the lien is given by the law administered in admiralty courts, and there is no circumstance, it seems to me, that takes from the local law its equal force and effect with that of the general maritime law. It is because the latter, by virtue of its own principles, recognizes the efficacy of the local statute to confer the lien, that courts of admiralty acquire jurisdiction to enforce it at all; in doing so, they are in fact, enforcing the general maritime law, and that law, in adopting and enforcing the lien given by the local law, incorporates it into its own system, and puts it on the same footing as if it had been given by the maritime law originally. It does not add to it any qualifications which render it inferior to the lien given by the maritime law itself

to similar claims of no higher degree of merit. It treats and ranks the lien given by the local law, according to the rank of the claim itself, as a maritime demand. In all cases in which courts of admiralty are called upon to determine the order of priority in marshaling the liens which it enforces, they are governed altogether by the merit, in view of the maritime law that distinguishes the claims which are secured by the liens enforced.

The relation of the courts of the United States exercising admiralty jurisdiction to the state laws, conferring liens for domestic supplies, repairs, and other necessaries, is described by the supreme court in the case of *The Lottawanna*, 21 Wall. 558. In the opinion of the court in that case it is said, (page 579:)

"It seems to be settled in our jurisprudence that so long as congress does not interpose to regulate the subject, the rights of material-men, furnishing necessaries to a vessel in her home port, may be regulated in each state by state legislation. State laws, it is true, cannot exclude the contract for furnishing such necessaries from the domain of admiralty jurisdiction, for it is a maritime contract, and they cannot alter the limits of that jurisdiction; nor can they confer it upon the state courts, so as to enable them to proceed *in rem* for the enforcement of liens created by such state laws, for it is exclusively conferred upon the district courts of the United States. They can only authorize the enforcement thereof by common-law remedies, or such remedies as are equivalent thereto. But the district courts of the United States, having jurisdiction of the contract as a maritime one, may enforce liens given for its security, even when created by state laws. * * * It is true that the inconveniencies arising from the often intricate and conflicting state laws creating such liens, induced this court, in the December term, 1858, to abrogate that portion of the twelfth admiralty rule of 1844 which allowed proceedings *in rem* against domestic ships for repairs and supplies furnished in the home port, and to allow proceedings *in personam* only in such cases. But we have now restored the rule of 1844, or, rather, we have made it general in its terms, giving to material-men in all cases their option to proceed either *in rem* or *in personam*. Of course, this modification of the rule cannot avail where no lien exists; but where one does exist, no matter by what law, it removes all obstacles to a proceeding *in rem*, if credit is given to the vessel."

It seems to be implied in this statement that no distinction such as is contended for exists in the character of the liens, according to their derivation from the general maritime law, or the local law it adopts.

This conclusion is strengthened when we consider the lien conferred by the statute and enforced in admiralty from another point of view. It is further contended that as between claims of the same kind, secured by the statutory lien, such as claims for supplies furnished at the home port, the liens given for their security must be rated according to the difference in date between the liabilities themselves,—that is, according to the dates at which the different supplies were furnished; and this contention is based upon the ground that such is the construction given to the statute in the state courts when it is applied to them. But admitting this construction to be the one adopted by the state courts in determining priorities between

liens given by the statutes to secure liabilities other than those arising upon maritime contracts, it would not, on that account, be applicable in admiralty courts in enforcing liens given by it to secure maritime liabilities. The rule of priority adopted in courts of common law and of equity, *qui prior est tempore potior est jure,* does not govern in admiralty causes, but often it is just the reverse; as it frequently happens in cases of salvage, and of repairs and supplies, that the last liability in point of time is the first in point of merit, as having served to preserve the very subject which supports the lien for all. So that, in enforcing the statutory lien in maritime causes, admiralty courts do not adopt the statute itself, or the construction placed upon it by courts of common law or of equity, when they apply it. Everything required by the statute as a condition on which the lien arises and vests, must, of course, be regarded by courts of admiralty, for they can only act in enforcing a lien when the statute has, according to its terms, conferred it; but beyond that the statute, as such, does not furnish the rule for governing the decision of the cause in admiralty, as between conflicting claims and liens. The maritime law treats the lien, because conferred upon a maritime contract by the statute, as if it had been conferred by itself, and consequently upon the same footing as all maritime liens; the order of payment between them being determinable upon its own principles. For this reason it ignores altogether liens given, even by the same statute, for contracts and liabilities not maritime in their character, such as those for materials and labor supplied in the construction of the vessel, and for materials and supplies, whether in a foreign or the home port, furnished not on the credit of the vessel itself, and also liens given by the owner of the vessel, as in case of mortgages. If the maritime quality of the contract was not imparted to the lien given to secure it by the statute, it would follow either that a court of admiralty could have no jurisdiction to enforce it at all, or else that, having such jurisdiction, it was bound to enforce all liens given by the statute according to its terms, whether upon maritime or non-maritime contracts and obligations. The other alternative, which is here adopted, is that the statutory lien given for maritime liabilities is, of itself, in the nature of a maritime lien, to be enforced as such in admiralty courts, according to their rules and practice; that quality being imparted to it by the maritime character of the contract and liability which it is given to secure.

It follows that the claims for materials and supplies, and for insurance, which have arisen at the home port, for which a lien is given by the local law, must be placed upon the same footing in the distribution with similar claims arising in foreign ports.

It remains to dispose of the conflicting claims to the residue, based on non-maritime contracts, viz., those for construction and the mortgage. As the court in distributing this remainder, if there be any, is administering its jurisdiction as a court of equity and not of admi-

ralty, it will follow the statute as construed by the judicial tribunals of the state. In doing so, it is required to prefer the statutory lien, given in aid of the builder's lien, as being both prior in time and higher in right. *Kellogg* v. *Brennan*, 14 Ohio, 72; *Provost* v. *Wilcox*, 17 Ohio, 359.

There is nothing in section 4192, Rev. St., which affects this result. That provision merely requires registration of mortgages or other conveyances of vessels as essential to their validity, except as against the grantors or other persons having actual notice thereof, and leaves all questions as to the priority of the incumbrances as they were before. The mortgage is but a conveyance of the title of the grantor, and can pass only what at the time he had, subject to every lien that had already become vested. More than this, the mortgagee is owner, and the vessel continues liable to become subject, while his title subsists, to whatever liens by subsequent transactions the law imposes, precisely as though there had been no change of title or ownership. The mortgagee, as creditor, has no higher rank than any other alienee.

Upon the finding of facts, I find the following as conclusions of law:

(1) That after payment of the costs of suit, and the amount found due in the seventh finding for money advanced and used to pay the wages of the crew, the fund in the registry should be applied to pay all the claims enumerated in the second, third, fourth, and eighth findings of fact, in equal proportion.

(2) That out of the remainder of said fund, if there be any, there be next paid, *pro rata*, the several claims mentioned in the fifth finding of fact; and next after them the amount due on account of the mortgage mentioned in the sixth finding.

(3) That claims mentioned in the ninth and tenth findings are not entitled to any part of the distribution, as they are not within the description of claims for which any lien is given.

BAXTER, J., concurs.