THE WILLIAM M. HOAG.

THE THREE SISTERS.

THE RESOLUTE.

YOUNG et al. v. BONNER et al. (two cases). DOWSETT v. SAME. WILSON et al. v. SAME.

(District Court, D. Oregon. September 24, 1895.)

Nos. 3,940, 3,941, 3,732, and 3,937.

1. MARITIME LIENS—SEAMEN'S WAGES—VESSEL IN HANDS OF RECEIVER.
    A seaman may acquire a lien for wages by reason of services rendered while employed by a receiver who has charge of the vessel, and is employing it in navigation under the orders of the court.

THE WILLIAM M. HOAG.

2. SAME—LIEN IN FAVOR OF MASTER—STATE STATUTES.

Where the state statute gives a lien for wages without excepting masters from its benefits, the federal courts will uphold the lien in the case of a master employed upon a vessel engaged in plying between points on a river at which are stationed agents clothed with authority to conduct the vessel's business, thus leaving the master merely the ordinary duties of navigation; for in such case the reason for the admiralty rule giving the master no lien does not exist.

3. SAME—STATE STATUTES—LIMITATIONS.

Where a' state statute creates a lien which the federal courts will enforce, but provides that the same shall be barred within one year, this limitation, being a part of the remedy, is ineffectual and void, since the state courts can have no jurisdiction in such cases.

4. SAME—ASSIGNABILITY.

A lien for seamen's wages will be enforced in the hands of an assignee thereof when there is no reason to question the fairness of the assignment. The New Idea, 60 Fed. 294, followed.

W. W. Cotton, for libelants, in Young et al. v. The William M. Hoag and The Three Sisters.

C. F. Lord, for libelant, in Dowsett v. The Resolute.

Thomas O'Day, for libelants, in Wilson et al. v. The Resolute.

W. T. Muir and J. R. Bryson, for claimants.

BELLINGER, District Judge. The most important question in these cases, and one that is common to them all, is the question whether a seaman can acquire a lien on a vessel by reason of services rendered while employed by a receiver who has charge of such vessel, and is employing it in navigation under the orders of the court appointing him. It is argued against the lien that no lien can attach to property in the custody of the law, and therefore no lien can attach to property in a receiver's hands; that to authorize a lien the employment must be made or authorized by, and the service must be for the benefit, actual or constructive, of, the owner; that the relation of the owner to the transaction must be of such a character that a right of action in personam can be maintained against him to recover the debt sought to be enforced as a lien against his property, and that it is against the policy of the law to allow admiralty to interfere with the operation of a vessel by a court having jurisdiction to operate it through a receiver. The holding in The Esteban de Antunano, 31 Fed. 920, and in The Augustine Kobbe, 37 Fed. 702, is that, when a vessel is in the custody of the law by an officer having her in possession under process, the authority of her owners and of their agents, the master and ship's husband, to thereafter affect the ship by any conduct or contract to result in a lien on the ship, is ended. In Parker v. The Little Acme, 43 Fed. 925, it is held that when a sheriff having possession of a vessel by virtue of a writ of execution ran the boat a few days without the knowledge or consent of the owner no lien would exist in favor of one who acted as master and pilot during the time, but such person must look to the sheriff for his compensation. In The Young America, 30 Fed. 790, the general and well-understood rule was applied that when a vessel is arrested in admiralty the law requires that she be safely kept by the marshal, and that such officer has no authority to create or permit charges upon the property beyond such as are necessary for its due care and preservation. These cases are relied upon by

the claimants as embodying principles necessarily decisive of the cases on trial. The rule of these cases is against a lien as a result of an unauthorized employment of a vessel by an officer having her in charge. The cases are those of. legal custody for safe-keeping or for sale under process. The employment of a vessel in such a case by the officer is not authorized. But when the custody is for the purpose of operating the property, of navigating a vessel by a court having jurisdiction, there is no reason to distinguish it from any other authorized employment. The receiver stands in the relation of owner. The expenses of his administration of property managed by him is always paid out of the assets in his hands, and constitute a first charge upon it. The court appointing a receiver may incumber the property in its custody by the issue of receiver's certificates, or may otherwise apply it in its operation. The owner's control is, therefore, not necessary in such a case to the creation of an obligation enforceable against his property. The objection urged in these cases has reference to the rights of the owner; but the owner's rights are subordinate to the authorized contracts and obligations of the receiver in any case, so that the enforcement of a claim for wages by a proceeding in rem does not prejudice the owner in any right which he otherwise has.

Does the fact that the wages are earned in an employment by a receiver take the case out of the general rule which confers jurisdiction upon the admiralty courts for any reason? It is urged that the court appointing the receiver is competent to protect the mariners' rights, and that by taking jurisdiction a court of admiralty interferes in the administration of the receivership. Maritime liens grow out of the necessities of commerce, and when they are for services they depend upon the character of the employment, and these are not affected by the fact of a receivership. The character of the ownership or control of a vessel cannot in any case affect its liability nor lessen the necessity for that credit which the law of maritime liens supplies, nor render less meritorious the services which that law compensates. Whether the court appointing the receiver might have provided for the payment of these claims, or had the power to do so, is not material. It has not done so, and the property is no longer in its custody. The right is a subsisting one under the law, and this court cannot properly refuse to enforce it.

Objection is made to the claims of Young and Raabe on the ground that the services rendered by them were as masters, and that for such services a lien does not exist. Such is the general rule in admiralty. The state statute, however, provides for a lien without exception as to masters of vessels. I cannot extend the admiralty exception to a case like this created by the state statute, unless the case is within the reason that authorizes such exception. The services in this case were upon a vessel plying between points in the river, at which agents were stationed by the receiver, who were clothed with authority to conduct the business of the vessel; thus leaving to the master merely the ordinary duties of navigation. The master was not a representative of the ship, authorized to create liens, and is, therefore, not within the reason of the rule that leaves him no lien. Nor do I think that such lien is barred by the limitations of the state

statute. That statute provides as follows: "All actions against a boat or vessel under the provisions of this title shall be commenced within one year after the cause of action shall have accrued." Hill's Ann. Laws Or. § 3706. This limitation applies to the procedure provided for by the state statute. It relates to the remedial provisions of the statute. It does not qualify the right of lien, nor constitute a condition of the lien. The statute provides for actions to enforce the liens it creates, and it limits the time within which such actions shall be brought. All these provisions which undertake to confer upon the state courts this right to bring actions to enforce the lien thus created are void. The Hine v. Trevor, 4 Wall. 555. And the limitation of such actions is therefore necessarily ineffectual and void.

It is contended that the assignee of the fireman's claim for wages for services on the Resolute cannot enforce the assigned claim; that the lien of a claim for mariners' wages is a personal privilege in the mariner, and for the mariner's protection, and is not assignable. The authorities are not in harmony upon this point. The assignment of a shipwright's lien for repairs is upheld in Park v. Hull of the Edgar Baxter, 37 Fed. 219, and that of a mariner's lien for wages is upheld in The New Idea, 60 Fed. 294. I am of the opinion that the lien of mariners for wages should stand upon the same footing with those of other laborers upon vessels and of material men. When the services are rendered, and the right is perfected, the assignability of a thing enhances its value, and a nonassignable character given to a mariner's lien is more likely to injure than protect the owner. When the services are rendered, and the right is perfected, there is no more reason to deny the mariner's right to dispose of this property than there is of any other belonging to him. The law guards him against imposition without imposing disabilities upon him in the enjoyment of his property and rights. Unless the assignee is a speculator, or there is other reason to question or suspect the fairness of the transaction, the lien for wages in the hands of the assignee should be enforced.

The exceptions to the libels are overruled.