THE ALCALDE.

(District Court, D. Washington, W. D.  September 24, 1904.)

No. 344.

1. MARITIME LIENS—AUTHORITY OF MASTER TO CREATE—ADVANCES FOR DISBURSEMENTS.

A master has authority to pledge the credit of a vessel for money borrowed for disbursements only where a necessity exists for such funds to keep the vessel in employment. One so advancing money is not entitled to a lien merely by subrogation to liens which may thereby be discharged.

2. SAME.

While a schooner lay at a port of discharge a receiver was appointed for her in a suit between the owners, who demanded her papers from the master, but the latter refused to surrender them until his wages for past services were paid. He was continued as master, and a day or two later went to libelant, a bank, which, at his request, advanced money to him on his drafts to disburse the vessel, having no knowledge of the receivership. The master used the funds in paying the wages due to the crew and himself, and for certain supplies, after which he left the vessel, and surrendered her to the receiver. *Held* that, conceding the claims paid to have been liens, no such maritime necessity for the loan appeared as to create a lien in favor of libelant therefor.

3. ADMIRALTY—WRONGFUL ATTACHMENT OF VESSEL—LIABILITY FOR DAMAGES.

A libelant who proceeds in rem against a vessel in good faith and under advice of counsel, although unsuccessful in establishing a lien, is not liable in damages because of his attachment of the vessel beyond the taxable costs of the suit.

In Admiralty. Libel in rem for money advanced to the master at the termination of a voyage, and by him applied to the payment of claims against the ship, including wages for his own past services. Hearing on the merits. Decree for the claimant.

Williams, Wood & Linthicum and H. S. Griggs, for libelant.
J. M. Ashton, for claimant.

HANFORD, District Judge. For a statement of this case I quote from the written argument filed in the case in behalf of the libelant, as follows:

"This suit is one brought by libelant to recover from the schooner Alcalde the sum of $855.33, with interest from December 27, 1900, the same being for moneys advanced by libelant to C. H. White, the master of said vessel, at the port of San Pedro, California, between December 22 and December 27, 1900, which moneys were used by the master for the purpose of paying off claims of a maritime nature against said vessel, and which claims were a maritime lien upon said vessel. It appears from the testimony and stipulations as to certain facts that during the year 1900 the schooner Alcalde was registered at the port of Calvary, Wisconsin, and that one John L. Beau was the managing

¶ 3. See Admiralty, vol. 1, Cent. Dig. § 413.

owner of said vessel, and owned a nine-sixteenth interest therein, the remaining seven-sixteenth interest being owned by different residents of San Francisco, California. On May 22, 1900, the vessel was upon the ways in Ballard, Washington, and on said date Mr. Beau appointed one C. H. White as the master of said vessel at the agreed rate of wages of $150 per month. This appointment was made by Mr. Beau when in the state of Washington, and Captain White assumed the duties of master of said vessel from said day until about the 28th day of December of the same year. The vessel made two voyages from Port Blakeley, Washington, to Nome, Alaska, during the summer of that year, and then loaded lumber at Port Blakeley for San Pedro, California, arriving at San Pedro on December 19th. Mr. Beau was living at Calvary, Wisconsin, during said time, and had appointed as agent one Wm. Johnson, residing on Battery street, San Francisco, California; and Captain White, before sailing from Port Blakeley to San Pedro, was given instructions not to collect the freight upon the lumber, but that the same would be collected by Mr. Johnson from the San Francisco office of the San Pedro Lumber Company, to whom said cargo was shipped. The vessel arrived at San Pedro upon the 19th of December. Trouble appears to have arisen between Mr. Beau and the other owners of said vessel, which trouble resulted in the appointment of a receiver of the vessel under proceedings had in the superior court of the city and county of San Francisco, state of California, and the receiver, Mr. Brightman, came on board the vessel at San Pedro on December 23d. The vessel, upon her arrival in San Pedro, was in need of money, and the master applied at the office of the San Pedro Lumber Company for money. On December 20th fifty dollars was advanced to the master, but, being advised by their San Francisco office not to make any further advances, the lumber company refused to advance the master any more funds, not informing him at the time that there was a receiver appointed for the schooner, and giving as a reason that, it being near the end of the year, and the books of the company being about to be closed, it was probably the desire of the San Francisco office that no further advances should be made to vessels at that time. (Deposition of Thos. H. Fawcett.) Captain White, being in need of more money, applied to the Bank of San Pedro, which bank had been in the habit of cashing drafts of vessels for the purpose of paying off the necessary disbursements at that port, and on December 20th secured from the bank seventy-five dollars. As stated above, the receiver came on board the vessel on the 23d (which was a Sunday), and on Monday demanded of Capt. White the papers of the ship. The master refused to give them up, claiming that the vessel owed him about seven hundred dollars, which the receiver said he had no authority to pay, and the master then told him that he would not turn over the ship's papers until he received his wages. As Captain White testifies (page 8, Deposition C. H. White), the receiver said on that day, 'I still appoint you master of the vessel,' and continued demanding the papers, which the master refused to give up. On that day the master went to the bank and borrowed an additional five hundred dollars. Nothing was said by the master to the officers of the bank about the receiver having been appointed for the ship, and the money was advanced by the libelant without any knowledge that such was the fact. On the 27th four hundred dollars more was secured by the captain from the bank, which money was advanced, as is stated by the officers of the bank, without knowledge on their part of a receiver having been appointed, and said money was advanced solely upon the faith and credit of the vessel. Out of the moneys so advanced the crew was paid off, longshoremen were paid, meat and other supplies were purchased, and seven hundred and thirty dollars were paid by the master to himself, the same being the wages due him at such time. The master then surrendered possession of the vessel to the receiver, and turned over to him the receipted bills for the accounts so paid by him."

This case must be determined by application of the general rule which prescribes the conditions essential to a valid maritime lien in favor of a materialman. The libelant is a creditor by reason of having advanced money on the credit of the Alcalde to her captain, which money was all used to disburse the ship. A lender of money

132 F.—37

for the benefit of a ship occupies the same position as other creditors who supply ship's stores, or materials required for repairs; that is to say, his claim to a lien as security for his debt must be grounded upon the peculiar facts which constitute the basis of all materialmen's liens in the maritime law. If the combination of requisite facts is complete, the money lender acquires a valid lien. Thomas v. Osborn, 19 How. 22, 15 L. Ed. 534; The Grapeshot, 9 Wall. 129, 19 L. Ed. 651. On the other hand, the equitable rule of subrogation does not ipso jure transfer existing liens to a mere volunteer who advances money to disburse a ship, when there is no stress of necessity. A maritime lien is the offspring of necessity; its purpose is to give wings and legs to commerce; hence the necessity to which the law pays regard has reference to the employment of the vessel. Maritime liens are given as a basis of credit to enable the master of a ship, when her owner is absent, to secure means to make his vessel seaworthy, so that she may proceed on her voyage without detention for lack of necessaries. The St. Jago de Cuba, 9 Wheat. 416, 6 L. Ed. 122; Hubbard v. Roach (C. C.) 2 Fed. 393; The Emily B. Souder, 17 Wall. 666, 21 L. Ed. 683; The Robert Dollar (D. C.) 115 Fed. 220. In the case at hand the libelant advanced money upon the request of Capt. White, after the appointment of a receiver by a court of equity to take the vessel into legal custody. Whether the receiver had lawful authority to take the vessel out of the captain's custody is a serious question, which I will avoid by assuming that Capt. White continued to be master with all the authority of a master of a vessel in a foreign port, until he voluntarily relinquished his command to the receiver, after having obtained from the libelant the money which he used in the manner above stated. I will also avoid discussion of the question whether the captain had a lien for the wages due him under the provisions of the statute of Washington, in which state he was employed and installed in the position of master, and assume that he did have a lien, and that all the money advanced by the libelant was used by the captain to satisfy demands which were existing liens upon the Alcalde. Having assumed so much in favor of the libelant, there remains yet to be considered only the question whether at the time the money was advanced by the libelant there existed a necessity for immediate use of the money which could justify the libelant in making a loan to the master upon the credit of the vessel. The Alcalde was in the port to which she had been dispatched to deliver a cargo, and, so far as the evidence discloses, it was her final port of discharge; that is to say, she was not under charter or contract to make another voyage, and in fact no other voyage was made with Capt. White as master. He borrowed the money to pay what was due to himself and to release himself from obligations, without having in contemplation another voyage. The money was not used, nor intended to be used, to clear the vessel from restraint by legal process, and she was voluntarily delivered up to a representative of legal authority. There was ample time to have communicated with the owners, and to have sued them, without exposing the vessel to peril, and without caus-

ing delay in her employment. The kind of necessity essential to the creation of a maritime lien was entirely absent, and the libelant did not acquire a lien, because, in the absence of necessity, the master had no authority to pledge the vessel.

The claimant has filed a cross-libel for damages caused by the attachment and detention of the vessel under process in this case, but I consider that in prosecuting this case the libelant has acted in good faith, under the advice of learned counsel, and that the process of the court has not been abused in such manner as to entitle the claimant to demurrage or compensation other than the costs legitimately taxable. The Alex Gibson (D. C.) 44 Fed. 371. Therefore the cross-libel will be dismissed, and I direct that a decree be entered in favor of the claimant for only the taxable costs.