### THE BETHLEHEM.

### THE NORTHERN WAVE.

(District Court, E. D. Pennsylvania. February 7, 1923.)

1. **Seamen ☞27—Lien for wages assignable, when seamen not overreached.**

   A maritime lien for seamen's wages is assignable, where the seamen receive their wages in full and are not overreached or defrauded.

2. **Seamen ☞27—Assignment of claims for wages held to carry with it decree enforcing liens, notwithstanding contemporaneous release.**

   An assignment of seamen's claims for wages and a mutual release between the seamen and the master of the vessel executed contemporaneously therewith must be read together as one document, though the physical signing of the release preceded the execution of the assignment, and when it was the intention of the parties that the claims should be assigned without the liens being released, the assignment carried with it decrees enforcing the liens.

3. **Seamen ☞27—No lien for wages after attachment of vessel by marshal.**

   No lien was created by maritime law for seamen's wages accruing after the vessel was attached by the marshal and had passed out of the control of the owners.

4. **Admiralty ☞93—Under order of reference, other lienors held entitled to attack ex parte decrees without making motion to vacate.**

   Where libels for wages were taken pro confesso, and decrees entered on ex parte hearings, and, the vessel having been sold and a number of other libels filed, the cases were referred to a commissioner by an order entitling each claimant to oppose and object to the claims of other claimants, other claimants were entitled to attack the decrees as in part covering nonlienable items without any formal motion to vacate the decrees.

5. **Admiralty ☞95—Decree only evidential as against third persons.**

   The rule that a decree is not open to collateral attack applies to parties and their privies, and decrees rendered ex parte on libels in admiralty on maritime liens were evidential only as against the parties thereto.

In Admiralty. Libels by one Granberg and various other persons against the steamship Bethlehem, and by one Foster and various other persons against the steamship Northern Wave. On exceptions to the commissioner's reports. Exceptions sustained in part, and dismissed in part.

Howard M. Long, Willard M. Harris, Francis C. Adler, H. Alan Dawson, and F. J. Bowden, all of Philadelphia, Pa., for exceptants.

George W. Coles, U. S. Dist. Atty., of Philadelphia, Pa., for the United States.

THOMPSON, District Judge. On December 11, 1920, two libels were filed against the Bethlehem, one by Granberg et al. for wages of part of the crew, amounting to $2,176.53, from October 30 to the date of filing the libel, and the other by Foster et al. for wages of the rest of the crew, amounting to $2,936.04, from October 30 to the date of filing the libel. The Bethlehem was attached the same day, and, no claim being made nor answer filed to either libel within the time required by the rules, the libels in both cases were taken pro confesso, and, upon ex parte hearings, final decrees were entered January 5, 1921, in the Granberg case for $3,581.47, and in the Foster case for $6,-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

013.52. A number of other libels were filed for repairs, wharfage, towage, supplies, and other charges. Under an order of sale, the Bethlehem was sold by the marshal for $15,000. On April 1, 1921, the cases were referred to a commissioner, and it is upon exceptions to his report upon the distribution of the said fund that the case is now before the court.

The Bethlehem had been sold by the United States Shipping Board to the West Indian Navigation Company for the price of $75,000, of which $7,500 was paid in cash, and the balance, $67,500, was covered by a mortgage, which fact, however, was not indorsed upon the ship's papers in accordance with the Merchant Marine Act of 1920. The Bethlehem, prior to the attachment, had loaded a cargo of coal, made some repairs, and been supplied. The purchasers of the Bethlehem apparently abandoned their enterprise, defaulted in payments to the Shipping Board, failed to pay the crew's wages, or charges for repairs or supplies, and the Shipping Board, in order to protect itself, paid the crew, and in the Granberg libel on May 9, 1921, caused an order to be entered by the proctor for the libelant, marking the judgment and decree to the use of the United States, represented by the United States Shipping Board. The commissioner, being of the opinion that he could not go behind the decree of the court, allowed the Shipping Board's claim in the sum of $3,581.47 against the objection of the exceptants, who contended that no maritime lien for seamen's wages accrued after the date of the attachment by the marshal.

In the suit of Foster et al. the Shipping Board claimed the amount of the decree on behalf of the United States under the following circumstances: There was made up in the office of the Shipping Board a pay roll covering the wages of the crew up to January 7, and a supplemental pay roll made up for the period from January 7 to January 12. On the latter date the crew signed a pay roll upon which in typewriting appears an assignment of the claim for wages to the Shipping Board, who paid them off. While the testimony was somewhat contradictory, the commissioner finds as a fact that the assignment was upon the pay roll when it was signed by the crew. It was contended by the exceptants, both before the commissioner and at the argument, that the assignment was not effective, because of the execution by the crew on the same day of a mutual release between the crew and the master of the vessel.

It is argued that if, as the commissioner inferentially finds, the release was executed before the assignment of the pay roll, the right to lien was extinguished, and there was no liability of the vessel to be assigned. The commissioner ruled against this contention upon the ground that the release was never delivered, and therefore was ineffective, and that the assignment carried with it the decree by which the wages were secured. The questions raised by the exceptions to the allowance of the Shipping Board's claims for wages as assignee, therefore, are, first, in the Foster case, was there a valid assignment which carried with it the decree; and, second, in each case, had the commissioner jurisdiction to inquire into the merits of the wage claims for

the period after December 11, 1920, when the Bethlehem was· in the marshal's custody under attachment?

[1] There has been a division of opinion in the courts as to whether a maritime lien for seamen's wages is assignable. The admiralty courts have from the earliest days been solicitous to protect seamen from imposition, because, through the nature of their occupation, they have been regarded as likely to be improvident and susceptible to fraud, and their wages were, therefore, held not subject to assignment. In recent years, however, the trend of decision has been otherwise, where it has clearly appeared that there was no fraud or overreaching upon the part of the assignee. In the instant case the crew received their wages in full.

It is now regarded as important that a maritime lien should be assignable, because a nonassignable claim is of doubtful value, and in many cases a seaman is better off to assign his claim; get his money, and sign up on another ship, than to wait until his claim can be paid out of the proceeds of a sale. I think the best reasoning is in favor of such claims, and the liens therefor being assignable. The Emma L. Coyne, Fed. Cas. No. 4446; The New Idea (D. C.) 60 Fed. 294; The Hoag·(D. C.) 69 Fed. 742.

[2] As to the effect of the release upon the assignment, the commissioner has found as a fact that the assignment was upon the pay roll before signature, and there is not such clear error as to justify the court in finding the contrary. Aside from the conclusion of the commissioner that the release had no effect until delivery the rule applies that, where two papers are executed contemporaneously, they must be read together as one document. Although the physical signing of the release may have occurred before the assignment was executed, it was, in effect, but one transaction, and the intention of the parties evidently was that the claims should be assigned without the liens being released. The assignment carried with it the decree.

[3] It appears, however, that the final decrees upon the libels for wages were entered upon an ex parte hearing after the libel was taken pro confesso for want of an answer or claim, and that it included wages which accrued after the attachment by the marshal, when the vessel was in custodia legis. As the vessel had passed out of the control of the owners during the period after December 11, no lien was created by maritime law for that part of the wages. The Astoria (C. C. A.) 281 Fed. 621. The question, then, is whether the Shipping Board, by virtue of the decree, is entitled to recover the full amount thereof as against other claimants against the fund, who had no opportunity to appear and be heard, and had no notice of the hearings upon which the final decrees were entered.

[4, 5] The commissioner has held that the sole remedy of the other claimants was upon motion to vacate the decrees, and that he had no power to inquire into the merits of the amount of the decree for wage claims. In this conclusion I think he has failed to apprehend the scope of the terms of the order of reference. By the terms of that order,

each claimant was entitled to oppose and object to the claim of every other claimant. The commissioner had before him the parties who had leave to contest the amount due to each petitioner or libelant, and no formal motion of any sort was necessary to place the parties in the position of contesting by testimony or otherwise the amounts due the Shipping Board. While the commissioner cannot be criticized for his caution in refusing to require evidence of the amount included in the decrees for wages up to December 11, 1920, yet the court should not permit injustice to be done to other claimants, through depriving them without hearing of the right to demand proof of the amounts due under these decrees, and of the benefit of recourse to a fund upon which neither the crew nor the Shipping Board ever had a lawful lien, which should have been enforced by decree. Nor should it allow the Shipping Board to take, by virtue of the ex parte decrees, more money than it was entitled to through a valid maritime lien.

The decrees were only evidential as between the parties thereto. The other lien claimants as to these decrees have had no day in court. The decrees entered for amounts in excess of that for which the crew had a lien, if taken as conclusive, would operate as a fraud upon other lien claimants. The rule that a decree is not open to collateral attack applies to the parties thereto and their privies. But the proceedings before the commissioner were directed for the very purpose, inter alia, of authorizing an attack, not collateral, but direct, upon all claims against the fund. They are attacked in the court in which they were entered, and in a proceeding taken for that purpose. Benedict's Admiralty, § 504; The Boston (C. C.) 8 Fed. 628.

The exceptions to the awards to the Shipping Board as use libelant in the suit of Granberg et al., and as assignee of Foster et al. in the wage claims, are sustained.

While the exception taken to the commissioner's fee in the Bethlehem Cases has been withdrawn, there is pending an exception to a fee of like amount in the Northern Wave Cases. I am of the opinion that a fee of $1,500 in each of the consolidated references will amply compensate the commissioner for the services rendered, and that the fund from each vessel should bear an equal share of the fee. The exception is therefore, to that extent, sustained. The matter will be referred back to the master for further proceedings, and to report a modified schedule of distribution in accordance with this opinion.

The remaining exceptions are dismissed, at the cost of the exceptants.

On December 10, 1920, a libel was filed against the Northern Wave by Crosby et al. for wages of the crew amounting to $2,171.84. The Northern Wave was attached the same day and, as in the wage claims against the Bethlehem, the libel was taken pro confesso and, upon ex parte hearing, a decree was entered January 5, 1921, for $5,224.36. The circumstances in connection with this claim are substantially similar to those in connection with the suit of Foster et al. against the Bethlehem. A claim as assignee was presented by the United States, represented by the United States Shipping Board, and upon the same

grounds as in the Foster suit against the Bethlehem, the commissioner awarded the United States as assignee the sum of $5,156.69. Exceptions were taken to this award which are sustained upon the same ground as similar claims in the Bethlehem case.

The exception to the commissioner's fee is sustained to the extent of reducing it to $1,500. The matter will be referred to the commissioner for further proceedings and to report a modified schedule of distribution in accordance with this opinion.

The remaining exceptions are dismissed at the cost of the exceptants.