## THE MINNIE AND EMMA.

District Court, D. Maryland. September 22, 1927.

No. 1442.

1. Maritime liens ⬅14, 37(1)—One who advances money to pay off liens gets lien of equal dignity.

One who advances money to discharge liens gets a lien of equal dignity with those discharged, and the existence of a necessity is not made a condition precedent.

2. Maritime liens ⬅14—One advancing money to pay wages to crew held entitled to lien therefor.

Libelant, who advanced money to pay wages to the crew, who were threatening to libel the vessel at a time when neither he nor the master could get into communication with the owner, *held* entitled to a maritime lien.

3. Maritime liens ⬅65—One advancing money to pay wages of crew held presumed to have relied on vessel's credit (46 USCA § 971).

One advancing money to pay wages to crew *held*, under Ship Mortgage Act 1920, § 30, subsec. P (46 USCA § 971 [Comp. St. § 8146¼ooo]), presumed to have relied on credit of vessel.

In Admiralty. Suit by the Captain's Ship Chandlery against the schooner Minnie and Emma. Decree for libelant.

Forrest Bramble, of Baltimore, Md., for libelant.

Willard M. Harris, of Philadelphia, Pa., and Keech, Deming & Carman, of Baltimore, Md., for respondent.

COLEMAN, District Judge. The libelant in this case, a ship chandler, advanced money upon the request of the master of the schooner Minnie and Emma to pay off seamen who were threatening to libel her for their wages. It appears that the vessel had been sold to the master at the beginning of the voyage by the claimant, the present owner, but the agreement was abrogated before the completion of the voyage, as is further indicated by the fact that all parties regarded claimant as owner. Upon reaching the port of Baltimore the master applied to libelant for the money. Effort was made by both parties to communicate with claimant, but without success. The seamen pressing for their money, libelant advanced it to the master, and it was by him paid over to them. No receipts were taken, either by libelant or the master. It appears, further, that the libelant had had previous dealings with claimant, and knew by reason thereof that his credit was sound. No mention was made as to whom the credit was given at the time of the advance. A lien is now claimed upon the vessel.

[1] In the first place, there is no reason to doubt but that the seamen had valid liens upon the schooner for their wages as a legal incident of the services performed by them, and this is not contested by claimant. The International (D. C.) 30 F. 375; The L. L. Lamb (D. C.) 31 F. 29; The General J. A. Dumont (D. C.) 158 F. 312 (4th Cir.). The objection to the libel is based upon the ground that there was no *necessity* for the advance, and that therefore no lien accrued in favor of libelant. The Alcalde (D. C.) 132 F. 576, and The Anna R. Heidritter (D. C.) 289 F. 112, are especially relied upon by claimant in support of this contention, but the great weight of authority establishes the rule that one who advances money to discharge liens gets a lien of equal dignity with the one discharged, and the existence of "a necessity," as argued by claimant, is not made a condition precedent. "Necessity" refers more properly to the occasion giving rise to the original lien rather than to the occasion for paying it off. The Emily Souder, 17 Wall. 666, 21 L. Ed. 683; The City of Camden (D. C.) 147 F. 847; The Ruth E. Merrill (C. C. A.) 286 F. 355. In the latter case,

Hough, J., said (page 357): "That such advances ordinarily obtain the lien and rank of the demands satisfied is perfectly settled." The Dunlap, 1 Lowell, 350, Fed. Cas. No. 513, and The Guiding Star (C. C.) 18 F. 263, are cited.

[2] As a matter of fact, it appears from the evidence that a necessity did exist, within claimant's definition. The vessel was about to be subjected to legal process at the instance of the seamen, and it was to avert this that the advance was made, libelant and the master both being unable to communicate with claimant. In The Alcalde, supra, the court said, at page 578: "The money was not used, nor intended to be used, to clear the vessel from restraint by legal process, and she was voluntarily delivered up to a representative of legal authority. There was ample time to have communicated with the owners, and to have sued them, without exposing the vessel to peril, and without causing delay in her employment. The kind of necessity essential to the creation of a maritime lien was entirely absent, and the libelant did not acquire a lien, because, in the absence of necessity, the master had no authority to pledge the vessel." It would seem from this language that had the facts been the same as in the present case, the court would have allowed the lien, although the rule of necessity there laid down is contra the weight of authority. The decision in the Anna R. Heidritter is not pertinent, because the facts are so dissimilar.

[3] Emphasis in the decisions is placed upon the fact that credit be given *to the vessel* upon which the lien is claimed. The presumption is that credit is so given to the vessel under the Lien Act of 1910 (amended by the Merchant Marine Act of 1920, 41 Stat. 1005 [46 USCA §§ 971–975; Comp. St. §§ 8146¼ooo–8146¼q]). The Cimbria (D. C.) 214 F. 128. There appears to be a direct conflict in the evidence as to whether libelant really relied upon the credit of claimant, in view of their previous dealings. Libelant stated that he relied upon the credit of the vessel. The master testified that nothing was said on this point. It therefore seems proper to let the presumption rule, and allow the lien.

A decree will be signed for libelant in the sum of $146.05, the amount advanced.