## THE PRESIDENT ARTHUR.

District Court, S. D. New York. February 9, 1928.

1. **Seamen** ⚖➜27(10)—**Lien for wages assignable, in absence of fraud or overreaching.**

A seaman may assign his lien for wages for fair and adequate consideration, and if there be no fraud or overreaching on the part of the assignee the lien will be enforced in admiralty at suit of the assignee.

2. **Champerty and maintenance** ⚖➜5(6)—**Attorney's payment of seamen's wages, taking assignments of claims and liens, held not "champertous" (Pen. Code N. Y. § 274).**

Payment by attorney of wages to seamen and taking assignments of their claims and liens *held* not champertous, under Pen. Code N. Y. § 274.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Champerty.]

3. **Seamen** ⚖➜27(10)—**Assignment of liens by seamen on full payment of their wages by assignee held valid.**

·Libelant, an attorney, paid the wages of the seamen on a vessel whose corporate owner was

wholly insolvent and then in the hands of a receiver, taking an assignment of their claims and liens. He borrowed the money on his own notes. *Held,* that the fact that his notes were indorsed by some of the stockholders of the corporation, who were not active in its management, and that enforcement of the liens might inure to their benefit, did not render the assignments invalid.

In Admiralty. Libel by Robert A. Pines against the steamship President Arthur. On exceptions to report of Commissioner. Exceptions sustained and decree for libelant.

In admiralty. This cause is a consolidation of various libels against the steamship President Arthur. The libelant, Robert A. Pines, procured an interlocutory decree pro confesso, and after reference to a special commissioner to determine the amount of his lien certain colibelants moved to open the default and for leave to answer his libel. Leave being granted, all of the issues raised by the answers of these colibelants were referred, upon consent of the parties, to a special commissioner for examination of the testimony and report. The commissioner having filed his report, in which he finds that the libelant, Robert A. Pines, is not entitled to recover, the matter is brought here on exceptions.

Bernard S. Barron, of New York City (Max Rockmore, of New York City, of counsel), for libelant.

Spitz & Bromberger and Haight, Smith, Griffin & Deming, all of New York City (Mark Ash, Edgar Bromberger, and Stanley W. Schaefer, all of New York City, of counsel), for answering colibelants.

THACHER, District Judge (after stating the facts as above). On September 11, 1925, a receiver in equity was appointed for the American Palestine Line, Inc., which owned and operated the steamship President Arthur, then completing a voyage from Palestine to New York. The financial condition of the company was such that it was without funds to pay the wages due to seamen aboard the vessel. Meetings of directors, stockholders, and others interested were held prior to the arrival of the ship, at which the financial condition of the company was discussed. The libelant, who was an attorney and whose father was a stockholder of the American Palestine Line, attended one or more of these meetings, and thereafter funds were raised by the libelant to the extent of $26,000, upon his own note, which was indorsed by his father and three other stockholders of the company. With these funds and some additional moneys raised upon another note of his, which

was indorsed by an attorney with whom he had formerly been associated in the practice of law, and who was also interested as a stockholder in the American Palestine Line, the libelant paid to the members of the crew of the President Arthur the full amount of their wage claims and took assignments of these claims, which purported to transfer to him, not only the claim for wages, but the maritime lien securing the same.

The special commissioner has concluded that the libelant has no enforceable lien. In support of his conclusion he has made the following findings: (1) That the credit of the steamship President Arthur was not and could not have been pledged, and therefore libelant acquired no lien against the steamship President Arthur by buying the wage claims and taking assignments thereof; and (2) that the mortgage prohibited the making of any liens, and that this fact was probably known to the libelant, or certainly could have been ascertained by him by the exercise of reasonable diligence.

So far as these findings may properly be regarded as findings of fact, they do not support the conclusion that the libelant acquired no lien by taking assignments of the wage claims. The libelant, who holds assignments of the liens of the seamen, is not seeking to enforce a lien for advances made to the master or owners upon the credit of the ship, as was the case in The Alcalde (D. C.) 132 F. 576. By virtue of his assignments he is seeking to enforce the rights of his assignors, who concededly rendered service upon the credit of the ship and were entitled to liens for their wages prior to the mortgage lien. There can be no doubt that the liens were intended to be assigned, and that effective instruments of transfer were executed by the seamen and delivered to the libelant. The right of recovery is therefore dependent solely upon the validity of these assignments.

[1] A seaman may assign his maritime lien for wages for adequate and fair consideration, and if there be no fraud or overreaching on the part of the assignee the lien will be enforced in admiralty at the suit of the assignee. The Bethlehem (D. C.) 286 F. 400; The New Idea (D. C.) 60 F. 294; The William M. Hoag (D. C.) 69 F. 742. The assignment of the claim carries with it the lien as security for the debt, whether the lien be mentioned in the assignment or not. The William M. Hoag, supra; The New Idea, supra; The American Eagle (D. C.) 19 F. 879; The Sarah J. Weed, 2 Low. 555, Fed. Cas. No. 12,350. In the instant case, the assignee having, in consideration of the assign-

ments, paid to the crew their wages in full, there can be no suggestion of unfairness.

[2] Champerty is urged against the assignments, it being contended that the libelant, a member of the bar, took assignments of the wage claims in violation of section 274 of the Penal Code, which provides: "An attorney or counselor shall not (1) directly or indirectly, buy, or be in any manner interested in buying, a bond, promissory note, bill of exchange, book debt, or other thing in action, with the intent and for the purpose of bringing an action thereon." This statute has been narrowly construed. It has been held that an attorney is not prohibited from discounting or purchasing bonds and mortgages and notes, or other choses in action, either for investment or for profit, or for the protection of other interests, and such purchase is not made illegal by the existence of the intent on his part at the time of the purchase, which must always exist in the case of such purchases, to bring suit upon them if necessary for their collection.

To constitute the offense, the primary purpose of the purchase must be to enable him to bring a suit, and the intent to bring a suit must not be merely incidental and contingent. Moses v. McDivitt, 88 N. Y. 65. An assignment taken in extinguishment of an existing indebtedness, and not for mere speculation upon the outcome of intended litigation, is not champertous or in violation of the state statute. Sampliner v. Motion Picture Patents Co., 254 U. S. 233, 240, 41 S. Ct. 79, 65 L. Ed. 240. Thus the objection to the assignments on the ground of champerty depended upon the intent with which they were taken by the libelant, and this question 'in turn depended upon conflicting testimony. There was ample evidence to sustain the findings of the special commissioner that the assignments were not champertous, and they should not be disturbed.

[3] Invalidity of the assignments is also asserted because the special commissioner found that Pines was not acting for himself, but as a dummy, either for the American Palestine Line, Inc., or for the indorsers who indorsed his note, upon which he borrowed funds sufficient to pay off the seamen. There is no evidence to support the finding that the libelant was acting as a dummy for the American Palestine Line. A receiver of this court was in control of its affairs at the time; it was entirely without funds or credit, and the moneys with which Pines acquired the wage claims did not belong to it. That part of the finding which concludes that Pines was acting as a dummy for the indorsers of his note is

also without evidence to support it, except to the extent that there was evidence from which it may be inferred that Pines was acting in the interest of the indorsers, who wished to see the men paid and were willing to indorse his note for this purpose.

Pines did, however, in fact assume primary liability, as the documents disclose, and did acquire the assignments of the wage claims, not as an agent or trustee, but as a principal. The documents were so drawn, Pines so testified, and so did those of the indorsers who were called as witnesses. The indorsers were stockholders of the American Palestine Line. Although the minutes showed their election as directors, the evidence shows that they did not accept election or act as directors. Under these circumstances, even if Pines was acting in their interest, there is no reason for holding that the liens assigned to him did not survive his payment of the wages due. Shareholders in a corporate owner of a ship have sometimes been denied maritime liens because of their relations to the vessel, but the mere fact of stock ownership is not enough to defeat a lien which otherwise would be enforceable. The Murphy Tugs (D. C.) 28 F. 429, opinion by Brown, District Judge of this court.

Judge Brown's decision was followed by Morton, District Judge, in The Gloucester (D. C.) 285 F. 579. The authorities bearing upon the point are collated in a note to that decision, and, referring to these cases, Judge Morton said: "Without undertaking to analyze all the cases which have been relied on against this claim—the principal ones are referred to in the footnote at the end—I think it will be found that, where a party who would otherwise have a maritime lien has been held not entitled to it, because of the relation in which he stood to the vessel, he was either (1) a real part owner of her, or (2) occupied a fiduciary relation towards her and her owners, or (3) dealt with himself on her account. Even within these classes the lien has under peculiar circumstances occasionally been allowed. In other words, the lien is really denied because of insuperable legal difficulties in the enforcement of it, or because—on grounds similar to estoppel—to recognize it would be inequitable to other claimants."

The instant case is one peculiarly fitting for the application of these principles. The indorsers were not active in the management of the vessel. The liens were not originally contracted between them and the ship, nor were the liens secretly obtained to the prejudice of subsequent lienors, and there could

be no prejudice to existing lienors in their acquisition by stockholders of the owning company. On the contrary, such acquisition was greatly to the benefit of existing lienors, because it prevented the accrual of substantial statutory penalties in favor of the seamen. Under these circumstances there would have been no justification for denying the existence of the liens, even if the libelant had acted as a dummy for those persons who indorsed his note.

The result is that the exceptions to the special commissioner's report must be sustained, and a final decree directed in favor of the libelant for the amount of the seamen's wage claims assigned to him.