## THE MELISSA TRASK.

(District Court, D. Massachusetts. January 10, 1923.)

No. 2080.

1. **Admiralty ⊕91—Final decree may be vacated after term, when entered by mistake.**

A final decree may be vacated and the case reopened after the term, where it was entered through mistake.

2. **United States ⊕76—Liens for taxes in favor of United States entitled to priority, but priority does not extend to penalties for failure of vessel to provide space for passengers.**

Under Merchant Marine Act 1920, § 30, subsec. M, head taxes on immigrants brought in by a vessel, which by Immigration Act Feb. 20, 1907, § 1, as amended (Comp. St. 1918, Comp. St. Ann. Supp 1919, § 4289¼aa), are made a lien on the vessel, are entitled to priority over a mortgage, on sale of the vessel in admiralty proceedings, by virtue of Rev. St. § 3466 (Comp. St. § 6372), giving priority to debts due the United States; but such priority does not extend to penalties incurred by the vessel for failure to provide required space for passengers carried.

In Admiralty. Suit by Andrew J. Wilson against the schooner Melissa Trask. On petition by the United States to vacate final decree, and reopen case for consideration of petitioner's claim. Decree vacated, and claim allowed in part.

Timothy F. O'Brien, of New Bedford, Mass., for libelant.

John H. Backus and James F. Meagher, both of Boston, Mass., for petitioners Briggs and others.

Solomon Rosenberg, of New Bedford, Mass., for petitioners O'Brien and others.

Charles P. Curtis, Jr., Asst. U. S. Atty., of Boston.

MORTON, District Judge. This is a petition by the United States to vacate a final decree entered in this suit at the last term, ordering distribution of the proceeds of the sale of the schooner, in order to permit the United States to establish a claim against her for head taxes and penalties. The ground of the petition is that the decree was entered by mistake on the part of the court and all parties concerned, in

supposing that the petition of the United States, which was then on file, had been withdrawn. The facts are as follows:

The Melissa Trask was a schooner which ran between New Bedford and the Azores. In 1919 and again in the early part of 1920 Briggs & Beckman, ship chandlers, furnished her with supplies and equipment under circumstances which admittedly entitled them to a maritime lien. Subsequently, in October, 1920, the vessel was mortgaged. In June, 1921, she returned from a voyage to the Western Islands, bringing a number of passengers, the head tax on whom, for some reason not now before the court, was not paid when they were landed. It is not contended by the government that they were smuggled into the country. The government also claims certain penalties against the schooner, because she did not have the space required for the number of passengers carried. The government seasonably intervened in the suit and asserted its claims.

After various proceedings, which it is unnecessary to state, the case was brought to the attention of Judge Mack, while sitting at New Bedford, on the statement of counsel that the intervening petition of the United States had been withdrawn, and that all other parties interested agreed to the decree presented, which was thereupon entered. In fact the United States had not withdrawn its intervening petition, but only a somewhat elaborate amendment thereof, and the action just referred to was taken without notice to it, and it was not advised of the entry of the decree until after the term had expired.

[1] The first question is whether the decree can now be vacated. While ordinarily a final decree cannot be reopened after the expiration of the term at which it was entered, it is settled that there is a limited right to reopen in cases of mistake or fraud. No fraud is claimed, but a mistake, under which Judge Mack and counsel for all parties except the United States acted, is shown. If Judge Mack had understood that the petition of the United States had not been withdrawn, he would not have made the decree; and if counsel for other parties had not so understood, they would not have asked him to enter such a decree. It follows that the decree entered may be set aside and the case reopened.

[2] The proceeds from the sale of the vessel were insufficient to satisfy the claims against her, even without the claims of the United States. Including the claims of the United States, little or nothing will be left for the mortgagee. It therefore becomes a question of importance to determine the relative priority of these claims. As all parties agree that the Briggs & Beckman bill for supplies and equipment is entitled to be paid first, that question need not be discussed. The real controversy comes between the mortgagee and the United States. This turns on the correct interpretation of subsection M of section 30 of the Merchant Marine Act of 1920 (41 Stat. 988), which provides, in substance, that there shall be ranked ahead of a mortgage only (1) liens which are in existence prior to it and (2) liens of certain specified kinds, among which neither head tax nor penalties are included. If this section stood alone, the rights of the United States would be postponed to those of the mortgagee. But the section must be construed,

of course, with due regard to other provisions of the statutes, especially Rev. Stat. § 3466 (Comp. St. § 6372), which in the strongest terms gives priority to debts or taxes due to the United States.

The Immigration Act (34 Stat. 898, as amended [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼aa]) provides (section 1) that—

"There shall be levied, collected, and paid, a tax of eight dollars for every alien * * * entering the United States. The said tax shall be paid to the collector of customs * * * by the master * * * of the vessel * * * bringing such alien to the United States. * * * The tax imposed by this section shall be a lien upon the vessel * * * and shall be a debt in favor of the United States against the owner."

It is contended by the mortgagee that, although called a "tax," this exaction is not a tax in the strict use of the word. But no decision has been cited which supports this contention. The exaction is referred to in the statute as a "tax," and I see no sufficient reason for holding it to be otherwise. It is expressly secured by a lien on the vessel, as well as entitled to priority by section 3466 above referred to.

While the question is not free from doubt, it does not seem to me that the provisions of section 30, subsection M, of the Shipping Act, were intended to postpone the government's right to taxes secured by liens on vessels to the rights of mortgagees. Indeed, the policy of the government to insist on priority for taxes is so fundamental, and so widely established in our law, that I should hesitate to say it had been relinquished without express language to that effect. I therefore reach the conclusion that the head tax takes precedence of the mortgage.

When it comes to the penalties claimed for the alleged failure of the vessel to provide sufficient space per passenger, the government's contention seems to me much weaker. Penalties involve misconduct or neglect—as applied to vessels, on the part of their officers, managers, or owners, generally speaking. They stand on a very different footing from taxes. Moreover, there is a recognized distinction between a priority resting on a lien and one not so secured. See Collier on Bankruptcy (12th Ed.) p. 988. The priority of taxes especially when secured by a lien is so basic as almost to go without saying; but this is not so with penalties, the omission to mention which in subsection M seems to me significant. If it had been intended to accord them priority over mortgages, I think it would have been so stated in the statute. This view seems to me to be considerably strengthened by the provisions of subsection O that a forfeiture of the vessel shall not affect the mortgagee's rights. It can hardly have been intended that mortgagees should be protected against forfeiture, but left open to imposition of penalties which may be equally disastrous.

There remains one further difficulty. Shortly after the entry of the decree the money in the registry was paid out in accordance therewith and the mortgagee received about $1,023. The mortgagee was not entitled to this money, and only obtained it by the mistake which has been referred to. An order may be entered directing the mortgagee to pay back into court as much of said sum as may be necessary to satisfy the tax. If the amount is not agreed to, there must be a reference to an assessor to state it.