### THE RIVER QUEEN. THE DISPATCH II. THE EVA LEIGH.

(District Court, E. D. Virginia. March 6, 1925.)

Nos. 4276–4278.

1. **Maritime liens ☞1—"Maritime lien" stands on broader principles than mechanic's and materialman's liens, and vests in creditor a special property in vessel.**

A "maritime lien" stands on higher foundation and broader principles than mechanic's or materialman's lien on house, and is debt against vessel itself, vesting in creditor, a special property in her, which subsists from moment that debt arises, and follows it even into hands of innocent purchasers.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Maritime Lien.]

2. **Internal revenue ☞26—Tax lien after levy relates back to time when taxes became due.**

United States tax lien, after levy has been made, relates back to time when taxes became due and payable.

3. **Maritime liens ☞36—Maritime lien for repairs made after taxes became due held superior to tax lien.**

Maritime lien on vessel, for repairs made after taxes became due, but without notice of government's claim therefor, held superior to government's lien after levy, notwithstanding tax lien related back to time when taxes became due, and notwithstanding Rev. St. § 3186 (Comp. St. § 5908), declaring tax lien in favor of government, which under Revenue Act 1921, § 1300 (Comp. St. Ann. Supp. 1923, § 6371⅘b), became part of Revenue Act.

In Admiralty. Libels by L. Johnson against the gas boats River Queen, Dispatch II, and Eva Leigh. On motion of E. Hogshire, Son & Co., Inc., and the United States to dismiss libels. Motion denied in part, and granted in part.

Henry Bowden, of Norfolk, Va., for libelant.

Lester S. Parsons, Asst. U. S. Atty., of Norfolk, Va., for the United States.

GRONER, District Judge. Section 3186, R. S. (Comp. St. § 5908), provides as follows:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount shall be a lien in favor of the United States from the time when the assessment list was received by the collector, except when otherwise provided, until paid, with the interest, penalties," etc. "Provided, however, That such lien shall not be valid as against any mortgagee, purchaser, or judgment creditor until notice of such lien shall be filed by the collector in the office of the clerk of the District Court of the district within which the property subject to such lien is situated," etc.

The proviso, which was inserted by an Act of March 4, 1913, is supposed to have been enacted at the suggestion of Judge Rose, growing out of his decision in the case of United States v. Curry (D. C.) 201 F. 371.

In the case last cited, Judge Rose decided that the lien of the government was valid as against innocent purchasers of property belonging to a delinquent taxpayer, without knowledge or notice of the lien. The statute expressly provides that the lien for unpaid taxes on property assessed by the United States shall attach from the time the assessment list is received by the collector. The Revenue Act of 1921, § 1300 (Comp. St. Ann. Supp. 1923, § 6371⅘b) makes all the statutory provisions for liens in favor of the United States a part of that act.

[1, 2] In the instant case, the assessment list was received by the collector, and the levy on the specific property on which libelant claims a maritime lien was made before the libels were filed. The property was then

at least constructively in the possession of the United States. The warrant of seizure shows that the delinquent income tax for 1918 amounted to $179,000, for 1919, $42,000, and for 1920, $16,000. It is insisted on behalf of the libelant that the lien given materialmen for repairs made to a vessel is a right in the thing itself; that is to say, the vessel—"the right which a creditor has in a thing of another, which right consists of the power to cause that thing to be sold in order to have the debt paid out of the price." It is undoubtedly true that a maritime lien stands upon a higher foundation and upon broader principles than those which underlie mechanics' and materialmen's liens on houses. It is a debt against the vessel itself, and vests in the creditor a special property in her which subsists from the moment the debt arises, and follows the ship even in the hands of an innocent purchaser for value. On the other hand, the lien of the United States for taxes, when a levy for the same has been made in accordance with the statute, relates back to the time when the taxes became due and payable (see United States v. Pacific R. R. [C. C.] 1 F. 97); and, since in this case taxes, which are far in excess of the value of the property seized and sold by the United States, were due on the 15th of March, 1920, for the year 1919, and since the materials and supplies for which the libels are filed were furnished in subsequent years, it would seem that, unless there is some peculiar quality to the liens of seamen and materialmen, the government should prevail.

[3] I have been furnished no authority by either side, but I have given serious consideration to the problem. I can find no case directly in point; the nearest, perhaps, is the opinion of Judge Morton in The Melissa Trask (D. C.) 285 F. 781, 1923 A. M. C. 193, though there the priority of the materialman was conceded. There are many cases in which the courts have passed upon the priority of the United States as against wage claims and those of materialmen in cases of forfeiture for violation of federal laws. In most of such cases the law makes the forfeiture of the ship coincident with the doing of the act for which the forfeiture is declared, that is to say, whenever the act condemned by the statute is committed, the forfeiture occurs, though it may not be enforced until some subsequent time. One such case is North American Commercial Co. v. United States, 81 F. 748, 26 C. C. A. 591. There a schooner was condemned and forfeited to the United States for

having killed fur seals within the prohibited zone in violation of an act of Congress. Under a decree of condemnation, the schooner was sold, and the proceeds paid into the registry of the court. An intervening libel was filed for supplies furnished at the request of the master prior to the commission of the offense for which the condemnation was had. The Circuit Court of Appeals (Ninth Circuit), in a well-considered opinion in which a great many cases are reviewed, decided that the materialman was entitled to a lien ahead of the United States.

In the case last cited, the lien in favor of the supply man arose prior to the commission of the offense. In the case of The St. Jago de Cuba, 9 Wheat. 409, 6 L. Ed. 122, which involved a somewhat similar question, the lien of the materialman was for work done on the vessel *after* the violation of law, and therefore after the forfeiture had, by virtue of statute, occurred.

In The Siren, 7 Wall. 152, 159, 19 L. Ed. 129, which followed, it was held as settled law that all maritime claims in the vessel extend to the proceeds of sale.

In The J. E. Rumbell, 148 U. S. 9, 13 S. Ct. 498, 37 L. Ed. 345, it was held that liens for repairs and supplies override all claims except for wages and salvage.

In The Florenzo, Fed. Cas. No. 4,886, it was held that the forfeiture of a vessel does not avoid the liens of seamen and materialmen existing at the time of the forfeiture.

So, in United States v. Wilder, Fed. Cas. No. 16,694, Judge Story held: "The lien of seamen's wages, and of bottomry bonds exists in all cases as much against the government, becoming proprietors by way of purchase, or forfeiture, or otherwise, as it does against the particular things in the possession of a private person."

In The Ranier, Fed. Cas. No. 11,565, the court said: "But if the forfeiture of the boat or an interest therein was absolute, and transferred the property therein from the time of the violation of the act to the United States, still it seems that it would be subject to the claims of the seamen and materialmen. The United States would take it as a purchaser cum onere."

The case of The Jennie Hayes (D. C.) 37 F. 373, is also in point. It was there held that the fact that the government has, by purchase, forfeiture, or otherwise, become the owner of a vessel, does not, ipso facto, displace or defeat liens in favor of seamen or materialmen.

In the cases now under consideration, the supply claimants in good faith and without

notice or cause to be put on notice, so far as the present pleadings show, furnished material for and did work on the several vessels necessary to enable them to operate. Without such repairs, the probability is that, in the interval between the time the tax accrued and the time the levy was made, nearly four years, the vessels would have become worthless; and it would seem to be a particularly hard law which would impose upon these claimants the forfeiture of their claims in behalf of the United States which, but for their services, would probably have had a bootless claim.

As was said by the Supreme Court in the St. Jago de Cuba, supra: "The whole object of giving admiralty process and priority of payment to privileged creditors is to furnish wings and legs to the forfeited hull, to get back for the benefit of all concerned; * * * and in every case the last lien given will supersede the preceding. * * * The vessel must get on; this is the consideration that controls every other."

The motion, therefore, of the United States to dismiss is denied as to such of the claims as were for supplies or work furnished prior to the levy. The motion is granted as to the claimant who claims the right of subrogation. The motion as to laches is not passed on, as there are no facts upon which the court can act at the present moment.