**UNITED STATES of America**

v.

**JANE B. CORPORATION, Saco-Moc Enterprises, Inc.**

**Civ. A. No. 53-1172.**

United States District Court
D. Massachusetts.

Oct. 15, 1958.

---

**354**

Anthony Julian, U. S. Atty., George C. Caner, Jr., Asst. U. S. Atty., Boston, Mass., Charles K. Rice, Asst. Atty. Gen., Richard M. Roberts, Stanley F. Krysa, Dept. of Justice, Washington, D. C., for plaintiff.

Sylvan A. Goodman, W. Langdon Powers, Walter Powers, Jr., Boston, Mass., for defendants.

FRANCIS J. W. FORD, District Judge.

This is an action by the United States to enforce a tax lien against a vessel. This vessel was at one time known as the Boat Barbara C. Angell and was owned by Boat Barbara C. Angell, Inc. On March 24, 1953, it was sold to Jane B. Corporation and is now called Boat Jane B.

The liens which the United States seeks to enforce were for withholding taxes and Federal Insurance Contributions Act taxes for the years 1947 through 1952, owed by Boat Barbara C. Angell, Inc. Assessments of these taxes were made, demand for payment was made upon the taxpayer and thereafter notices of tax liens were filed in the Registry of Deeds for Bristol County, Massachusetts, at various dates from 1948 through 1953. The total amount of taxes represented by these claims was $53,306.42. It is stipulated that the amount of these taxes now remaining unpaid is $35,306.42. Most of these notices of lien were recorded under the name "Boat Barbara C. Angell, Incorporated," but notices of · lien in the amount of $10,365.93 were recorded under the name "Boat Barbara C. Angell" or "Boat Barbara C. Angell, William P. Angell, owner." Notices of lien for part of these same taxes in the amount of $27,952.30 were filed on February 27, 1953, in the office of the City Clerk of New Bedford, Massachusetts.

During the time when these taxes were assessed and the notices of lien recorded, Boat Barbara C. Angell was owned by Boat Barbara C. Angell, Incorporated. This corporation was dissolved on June 13, 1951, pursuant to Mass.G.L.Ch. 155, § 50A. At that time William P. Angell and his wife were the sole stockholders. The vessel during this time was enrolled at New Bedford as its home port, but operated as a fishing vessel exclusively out of Boston. The corporation's principal place of business as stated in its Articles of Organization was New Bedford, but it maintained an office in Boston at which most of its business was actually transacted.

On March 24, 1953, the vessel was sold to Jane B. Corporation for $135,000. At that time there was outstanding a preferred mortgage on the vessel in the amount of $33,833.86 and various maritime liens totaling $19,639.11. At the time of purchase the buyer delivered to the selling corporation checks for the amount of the mortgage and each of the various liens. These were endorsed by Angell as treasurer of the seller to the various claimants and returned to the buyer who then delivered them to the mortgagees and lien holders and received from them discharges of their claims. A further check for $80,775.70 representing the balance of the purchase price was delivered to the seller.

Jane B. Corporation is wholly owned by the other defendant, Saco-Moc Enterprises, Inc., a Maine corporation which purchased all the capital stock of Jane B. Corporation for $35,000. It also loaned $100,000 to the Jane B. Corporation on March 23, 1953, to enable it to purchase the vessel, receiving in return a mortgage executed June 15, 1953, and recorded June 24, 1953.

Since January 1, 1958, Saco-Moc Enterprises, Inc. has paid a total of $40,-695.14 of accounts payable by Jane B.

Corporation and has received assignments of these accounts from the creditors, who had maritime liens therefor on the vessel.

It is stipulated that the present value of the vessel is $55,000.

Defendants have two general grounds for opposing the allowance of enforcement of the tax liens claimed by the government. First, they contend that they hold valid liens having priority over any tax liens and far exceeding the stipulated value of the vessel, so that the proceeds of a sale of the vessel would be payable entirely to defendants and the government would take nothing. Secondly, they argue that some or all of the claimed tax liens were not properly recorded and hence are invalid against defendants as subsequent purchaser and mortgagee of the vessel.

■ Defendants attack the validity of the government's tax liens on several grounds. First they argue that those notices in which the taxpayer was improperly named as "Boat Barbara C. Angell" instead of the correct designation "Boat Barbara C. Angell, Inc.," were ineffective to establish a valid lien. This was only a minor error which would not render the filing of notice of the lien ineffective. Clearly any prudent person searching the record would have discovered the actual notice filed and would have been put on notice of the lien against the corporation. Richter's Loan Company v. United States, 5 Cir., 235 F.2d 753.

Defendant also argues that the filing of notice was made under an inapplicable statute. 26 U.S.C.A. § 3672 provides for filing in accordance with the law of the state in which the property subject to the lien is situated when the state has provided by law for the filing of such notice. Mass.G.L.Ch. 36, § 24 until 1952 provided: "Notice of a federal tax lien on any property or rights thereto, or a certificate of discharge of such a lien, may be filed without the payment of any fee with the register of deeds of the county where the property is situated

and shall be recorded." An amendment approved April 12, 1952, added the following sentence: "No such federal lien shall be valid against any person other than the person named in the lien, unless such lien is recorded, in the case of real property, in the district where the real estate is located, and in the case of personal property in the office of the clerk of the city or town in which the person against whom a lien is filed resides or has his usual place of business."

Defendants first argue that the statute as it read before up to 1952, being part of a chapter dealing with registers of deeds and the recording of documents relating to real property, was meant to apply only to notices of tax liens against real estate and not to tax liens against vessels or other personal property. There being no other provision in the state law for the filing of tax liens, it is contended that the notice of tax lien to be effective against the vessel here should have been filed in the office of the Clerk of the United States District Court under the alternative filing provision of 26 U.S.C.A. § 3672(a) (2).

■ The federal statute provides, 26 U.S.C.A. § 3670, for a tax lien upon all property and rights to property of taxpayer, it would seem that the Massachusetts statute, referring to notice of a lien "on any property or rights thereto" was intended to be as broad in its scope as the federal statute. The fact that the section refers to "any property" and the absence of any other provision for filing of notice of tax liens on personal property indicate that § 24 was intended to make full provision for the filing of all tax liens under 26 U.S.C.A. § 3672(a) (1). This, of course, introduces into Ch. 36 matter which differs from the principal subject matter of the chapter. But it is significant that when the Massachusetts Legislature made express provision for a different method of filing tax liens on personal property, it was placed in this same chapter and section. Consequently it must be held that tax lien notices properly filed under Mass.G.L.Ch.

36, § 24 would perfect a lien against the vessel.

However, defendants argue that in any event filing of notices in Bristol County or in the city of New Bedford was ineffective since the vessel was actually located in Boston and the corporate owner carried on most of its business from its Boston Office. In general personal property, regardless of its actual physical location, is regarded as having its legal situs at the domicil of its owner. In the case of a corporate owner this would be the principal place of business of the corporation. The principal place of business should be that officially designated in its articles of organization and thus made a matter of readily available public record. Otherwise, it would be necessary for one who wishes to file a notice of lien against a corporation to investigate its affairs, especially where it does business at several locations, to determine which should be considered the principal place of business. Nor would it then follow, as defendants seem to contend, that the place where most of its transactions are handled is necessarily its principal place of business. The notices of the tax lien were properly recorded under the earlier form of § 24 in Bristol County, the legal situs of the vessel, and under the amended form in the office of the city clerk of New Bedford, where the corporate owner had its properly designated principal place of business. Grand Prairie State Bank v. United States, 5 Cir., 206 F.2d 217.

Defendant Saco-Moc Enterprises, having paid lien claims against the vessel arising since January 1, 1958, and taken an assignment of those lien claims, contends that they are entitled to priority over any tax liens of the government. The United States does not contest the validity of these liens held by defendant but only argues that they should not be entitled to priority over previously perfected tax liens. However, it is clearly the law in this circuit, as decided in the recent case of United States v. Flood, 1 Cir., 247 F.2d 209, that an assignee of a maritime lien is entitled to priority over a federal tax lien even though the maritime lien arose after the tax lien was perfected.

A similar question of priorities arises with respect to the government's tax liens and the claims of Saco-Moc under its mortgage. The government contends that the tax liens have priority because they are preferred maritime liens within the meaning of the Ship Mortgage Act of 1920, 46 U.S.C.A. § 953. One case in this district, The Melissa Trask, D.C., 285 F. 781, is cited in support of this view. See the discussion of this case in Fridlund, "Federal Taxes and Preferred Ship Mortgages," 38 Harv.L.Rev. 1060.

The Ship Mortgage Act provides that a mortgage recorded under the Act "shall have priority over all claims against the vessel, except (1) preferred maritime liens, and (2) expenses and fees allowed and costs taxed, by the court." 46 U.S.C.A. § 953(b). In § 953(a) a preferred maritime lien is defined as a lien arising prior in time to the recording and indorsement of the preferred mortgage. The reasonable interpretation of this is that only *maritime* liens arising prior to the recording of the mortgage are given standing as preferred maritime liens. A tax lien is given no priority by 26 U.S.C.A. § 3670. It is clearly a nonmaritime lien. United States v. Flood, supra. Hence it is not entitled to priority over a subsequently recorded preferred ship mortgage. Gulf Coast Marine Ways v. The J. R. Hardee, D.C., 107 F. Supp. 379. To hold that a federal tax lien is a preferred maritime lien would produce the anomalous result that the tax lien would be prior to the preferred ship mortgage, which in turn would be prior to subsequently acquired liens for supplies furnished the vessel, which in turn under the Flood case, supra, would have priority over the tax lien.

Defendants also contend that they are entitled to be subrogated equitably to the maritime liens and preferred mortgages paid at the time the boat was

purchased by Jane B. Corporation, on the theory that they stand in the position of one who has advanced money to discharge a lien upon the property of another. It is true, as government contends, that an owner of a vessel who pays off his creditors who hold liens against the vessel cannot himself acquire a lien but rather extinguishes the lien. The Cimbria, D.C., 214 F. 131. The situation here, however, is not quite so simple. As part of the transaction for the purchase of the vessel, defendant Jane B. Corporation advanced funds to the seller to pay off the claims against the vessel before it was actually sold. On the day of the sale, the first claims against the vessel were those of the holders of the outstanding liens and mortgages, then followed the government's claim on its tax liens, and finally the interest of the selling corporation. If defendants had directly paid the creditors, taking assignments of the liens, and then purchased the owner's interest in the vessel, they would clearly stand in the position of having a first claim on the vessel to the extent of the liens assigned to them and the government would stand in the same position as it stood before the transaction.

Defendants instead advanced funds to the seller to remove all known encumbrances, adopting a procedure to insure that these funds were applied to that purpose, and taking discharges of the various liens, and thereafter purchased the vessel free, as they believed, of all encumbrances, since they had no actual knowledge of the existence of the tax liens. In such a situation, where the purchaser of property subject to an encumbrance, as part of the purchase transaction and in the belief that he is thereby acquiring the full interest in the property, secures the application of part of the purchase price to securing the discharge of the encumbrance, he is entitled to be treated as an equitable assignee or subrogee of the encumbrance thus removed, where this is necessary to protect the title he thinks he is acquiring against the claims of holders of encumbrances.

subordinate to that which he has removed and insofar as this can be done without invading the rights of the holders of the subsequent encumbrances. Burgoon v. Lavezzo, 68 App.D.C. 20, 113 A.L.R. 944, 92 F.2d 726; Taylor v. Wilcox, 167 Mass. 572, 46 N.E. 115. This is true even though the defendants may have had constructive notice of the government's properly recorded tax liens. Worcester North Savings Institution v. Farwell, 292 Mass. 568, 574, 198 N.E. 897. The government's rights were unchanged as a result of this transaction, which left it with valid tax liens subordinate to the same claims held by defendants as equitable subrogees which were held by independent lien holders immediately before the transaction.

Thus the defendants hold valid claims on the vessel having priority over the tax liens and far in excess of the stipulated present value of the vessel. In this situation the petition for enforcement of the tax liens and for the sale of the vessel should be denied.

Judgment for defendants.