**P. C. PFEIFFER COMPANY, Inc., Libellant,**

v.

**THE Steamship PACIFIC STAR, her engines, tackle, apparel, etc., and Compass Steamship Corporation and World Tramping Agencies, Inc., Respondents.**

**No. 8061.**

United States District Court
E. D. Virginia,
Norfolk Division.
May 23, 1960.

Robert T. S. Colby, Asst. U. S. Atty., Washington, D. C., for Government, petitioner.

Baird, Crenshaw & Lanning, F. N. Crenshaw, Norfolk, Va., for P. C. Pfeiffer Co., Inc.

Devany & Redfern, W. L. Devany, Jr., Norfolk, Va., for crewmen.

Vandeventer, Black & Meredith, J. A. Gawrys, Norfolk, Va., for Marine Midland Trust Co., intervenor.

Howell, Anninos & Daugherty, Henry E. Howell, Jr., Norfolk, Va., for crewmen.

WALTER E. HOFFMAN, District Court.

Following the arrest of the SS Pacific Star at the instance of various maritime lienors, including the claims of crewmen serving aboard the vessel at the time of its attachment, the Pacific Star was sold pursuant to an order of Court. Thereafter, the Court distributed certain costs and entered an order directing the payment of *net* wages stipulated to be due and owing former crewmen as preferred lienors. Proctors for the crewmen requested, and now ask, that the amounts withheld from the wages of the crewmen for F.I.C.A. and withholding taxes be paid to the Internal Revenue Service in accordance with a petition filed by the United States.

It is conceded that, but for the F.I.C.A. and withholding taxes provided by law, the crewmen would have a preferred maritime lien for the entire amount of their wages in accordance with their contract of employment. The Court, in directing the payment of *net* wages to crewmen, reserved for further determination all matters relating to taxes on said wages.

It should be noted that the balance of the gross wages now on deposit is not the result of wages previously paid by the vessel, its master or owners. This controversy pertains to wages due and owing to the crewmen at the time the vessel was arrested, and not to any claim for funds withheld for taxes by the shipowner as a result of any past service. The balance of the gross wages aggregates $8,555.97.

Certain holders of maritime liens, admittedly inferior to any claims for wages, insist that the funds now in control of the Court should not be paid to the Internal Revenue Service, despite the fact that the crewmen desire the funds paid in this manner as such payment would relieve their tax liability for the wages paid pursuant to court order.

It would be an anomaly to decline the prayer for relief as stated in the Government's petition when the crewmen are requesting that the balance of their wages be paid in this manner. The effect would be a reduction in the amount of the maritime lien to which the crewmen would otherwise be entitled. Prior to the enactment of legislation providing

for withholding and F.I.C.A. taxes, there could be no doubt as to the right of the crewmen to enforce their maritime lien to the full extent of their gross wages. As the other lienors would have the Court hold, the crewmen would be liable for taxes on the net wages paid to them under the court order. There is no distinction, in the Court's opinion, between paying the balance of the gross wages to the crewmen, thereby making them liable for the tax, and paying this balance to the Internal Revenue Service, with the consent and direction of the crewmen, to be applied against their tax liability.

Lienors insist that, in an action for unpaid wages, the crewmen would only be entitled to recover the net wages after appropriate tax deductions, citing United States v. Johnson, 9 Cir., 160 F.2d 789, 797, and The City of Avalon, 9 Cir., 156 F.2d 500, 501. These cases presuppose a solvent employer who is required by § 3102 and § 3402 of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 3102, 3402, to deduct from the wages paid the employee the taxes required by law. The logic of these cases is not in dispute. To hold otherwise would result in the employer becoming liable for the taxes due on such wages, including the tax on such portion which should have been withheld. In this proceeding, however, the Internal Revenue Service makes no claim for taxes withheld by the former employer. It looks to the person having control over the payment of wages. While it is unnecessary to determine the possible liability of the judge who orders the payment, or the clerk who actually makes the payment, the clear intent of Congress is expressed in § 3401(d) (1) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 3401(d) (1), wherein the term "employer" is defined as applied to withholding taxes.

▪ That a court and its officers are not immune from possible liability for withholding taxes is reflected in bankruptcy proceedings. United States v. Fogarty, 8 Cir., 164 F.2d 26, 174 A.L.R. 1284; § 7501 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7501. Both the admiralty and bankruptcy courts are essentially governed by equitable principles. Such principles dictate that these crewmen, holding a maritime lien against the vessel for their entire gross wages, should be permitted, by and with their consent, to perfect this lien by permitting their tax liability to be discharged as to the wages paid by order of court. In reality there is no difference between the payment to the crewmen, who could assign their interest therein if approved by the Court, and the payment directly to the Internal Revenue Service.

The United States does not contend that it has a preferred maritime lien for taxes.[1] It merely asserts that it stands in the shoes of the crewmen holding preferred maritime liens and, as to the fund under the control of the Court, it is entitled to payment where the crewmen join in the request. Presumably the true employer is now defunct and out of business. Nevertheless, the forms required by law to be completed by the "employer" may be handled by the Internal Revenue Service in light of judicial pronouncement as to the rights of the parties. The Court is merely holding the balance of wages due the crewmen as a special stakeholder of trust funds for the United States.

▪ This holding is not in conflict with United States v. Crosland Construction Co., 4 Cir., 217 F.2d 275, and General Casualty Co. of America v. United States, 5 Cir., 205 F.2d 753, 754. These cases involved situations in which the real employer had already deducted the taxes. Once deducted under the ordinary employer-employee relationship, the money then becomes due to the United States as taxes and not as wages. That, however, is not the factual situation here presented.

1. United States v. Jane B. Corporation, D.C.Mass., 167 F.Supp. 352; United States v. Flood, 1 Cir., 247 F.2d 209; The River Queen, D.C.E.D.Va., 8 F.2d 426; Gulfcoast Marine Ways v. The J. R. Hardee, D.C.S.D.Tex., 107 F.Supp. 379.

An order will be entered directing the Clerk to pay to the United States the balance of the gross wages due to the crewmen, to whom the net wages have previously been paid by order of this Court. Said order shall be endorsed by proctors for the crewmen as evidence of their specific request that the balance of said wages be paid to the taxing authority.