**UNITED STATES of America,**
Libelant,

v.

**OIL SCREWS KEN, JR., LINDA SUE, LITTLE PUNT, CINDEE ROSE, NICK III, SEA GULL, SEA QUEEN, MARY FRANCES, and the DREDGE PMC NO. 3, their engines, tackle, furniture, apparel, etc., Popich Marine Construction, Inc., and Nick P. Popich, Respondents.**

No. 5864.

United States District Court
E. D. Louisiana,
New Orleans Division.

Nov. 6, 1967.

Terrence R. Murphy, Atty., Admiralty & Shipping Section, Dept. of Justice, Washington, D. C., Louis C. LaCour, U. S. Atty., New Orleans, La., for libelant.

James H. Roussel, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for intervenor, Hunt Tool Co.

Thomas H. Kingsmill, Jr., New Orleans, La., for trustee, James T. Owen.

794

BOYLE, District Judge.

The joint motion of the United States of America, preferred ship mortgagee, and Hunt Tool Company, preferred maritime lienholder, seeks distribution of $55,036.87 in this Court's registry, said amount being the residue of proceeds of the sale of nine vessels formerly owned by the mortgagor, Popich Marine Construction, Inc.

The libelant, United States of America, by its original libel, filed May 16, 1963, and its supplemental libel, filed August 13, 1963, sought enforcement of a preferred ship mortgage granted on July 25, 1961 by the mortgagor corporation, acting through its President, Nick P. Popich, and two similar mortgages granted on August 17, 1962 and December 13, 1962 by the mortgagor, then in State receivership, acting through Popich as its President and Receiver. Combined, the mortgages secured an original debt of $350,000.00.

The mortgagor was placed in receivership in a State Court proceeding in July, 1962. Popich was succeeded as Receiver by Thomas C. Wicker, Jr., who in turn gave way to James T. Owen, Trustee, when the corporation was adjudicated a bankrupt on November 8, 1963.

On August 16, 1963, this Court ordered the issuance of process against the vessels, at the same time ordering the Receiver to turn same over to the Marshal. In the Order, the Court reserved "the right, if any, of the Receiver to intervene in this proceeding for the purpose of asserting any claim which he has or may have against the proceeds of the sale of said vessels. * * *."

On September 16, 1963, Receiver Wicker intervened. He opposed the sale of the vessels unless a pro rata of the "costs and expenses of the Receivership" is paid by the United States of America or out of the proceeds of the sale. He prayed for dismissal of the libel and, alternatively, that the "claims of the Receivership for administrative costs be recognized and preserved against the proceeds of the sales and be granted such priority as they are entitled to by law."

By its decree of November 4, 1963, this Court 1) defaulted all persons who failed to appear and file claims; 2) recognized the validity of the libelant's preferred mortgages and its right to recover the principal balance of $334,303.82, plus interest, expenses and costs; 3) ordered the sale of the vessels; and 4) reserved "the rights, if any," of Wicker, Receiver, "against the proceeds for pro rata assessment of Receivership costs and expenses."

On December 10, 1963, the vessels were sold for a total of $56,750.00.

On June 23, 1966, the libelant sought to have distributed to it the balance of $55,036.87 in the Court's registry. Its motion alleged that Wicker was the only intervenor claimant and the existence of his rights, or the extent thereof, if any, to the fund had not been determined, at the same time maintaining that Wicker was without right to share in the fund. The motion also called attention to the fact that Hunt Tool Company had proceeded in rem in an independent proceeding filed October 16, 1963, to enforce repair liens against five of the nine vessels.

Hunt then was granted leave to, and did, intervene herein. It asserted maritime liens totaling $27,629.36.

Owen, Trustee in Bankruptcy, was substituted for Wicker, the Receiver, and, claiming a right to share in the fund, opposed distribution of the total thereof to libelant, whose motion was denied on November 7, 1966.

The motion now under consideration was filed on June 28, 1967, together with the stipulation of the movers, detailing Hunt's preferred maritime liens which arose prior to the recordation of libelant's preferred ship mortgages and which represent $20,100.76 of the $27,629.36 claimed by Hunt. Hunt concedes the United States of America should receive the remainder of the fund, $34,936.11.

The motion negatives other intervenors, except the Bankruptcy Trustee whose rights, if any, to the fund are alleged to be not yet determined. Mov-

ers then aver that the claim of the State Court receivership is not a maritime lien and should not be paid, if at all, until all maritime liens and preferred ship mortgages have been satisfied. In this connection, it should be noted that if the motion is granted, $299,871.64 on the libelant's claim and $7,528.60 on Hunt's liens would remain unpaid.

The Trustee opponent does not contest the validity or amounts of the claims of the United States and Hunt. Though contending he has an interest in the fund, he fails to specify the dollar value thereof. By way of his memorandum in support of his opposition, he claims his interest arises because the United States acquiesced in the receivership proceeding, in which administrative costs were incurred, accepted the benefits of the Receiver's efforts to work out the financial difficulties of the corporation and permitted the vessels to remain in the custody, control and possession of the Receiver over an extended period. The vessels, it is conceded, were in the custody of this Court in admiralty prior to the adjudication in bankruptcy. He asserts that it would be inequitable to permit the United States and Hood to withdraw all the proceeds without being made to bear some pro rata of the costs of the State Court receivership.

He further urges that the Louisiana jurisprudence to the effect that "a mortgage creditor who acquiesced and permitted its property to remain in a State Court receivership proceeding is liable or responsible for an assessment of the administrative costs of said proceedings," citing Borne v. Alexander Hardwood Co., 140 La. 315, 72 So. 979 (1916); Weber v. Press of H. N. Cornay, 144 So.2d 581 (La.App.1962); In re Clover Ridge Planting & Mfg. Co., Inc., 178 La. 302, 151 So. 212 (1933).

He also relies on Consumers Co. v. Goodrich Transit Co., 53 F.2d 972 (7th Cir., 1932), cert. den. First Union Trust & Savings Bank v. Consumers Co., 286 U.S. 548, 52 S.Ct. 500, 76 L.Ed. 1284, and argues that the fact that a State receivership is here involved, rather than a Federal receivership, as was the case in Consumers, should be of no moment. Assuming, but not conceding, the validity of such argument, Consumers may be pertinent if the issue here were whether we should allow a threatened foreclosure of preferred ship mortgages on vessels validly possessed by a State Court Receiver or, if as in Consumers, a Receiver in a Federal receivership. But neither is the case here.

At no time did Popich or Wicker, the State Court Receivers, nor did Owen, the Bankruptcy Trustee, seek to stay the foreclosure or sale in admiralty.

Consumers holds that the Ship Mortgage Act did not restrict or impair the general equity jurisdiction of a Federal Court or its equity power in a Federal receivership begun before any foreclosure action to stay temporarily, in its discretion, the right of a preferred ship mortgagee to sell the collateral in admiralty.

In its recognition that the Ship Mortgage Act gives a mortgagee certain rights which cannot be impaired Consumers condemns, rather than supports, opponent's claim.

The movers, of course, contend that the Ship Mortgage Act guarantees their priorities. Both protest that they do not rest their claims on the Louisiana law of receivership, and deny acquiescence in or benefits derived from the State receivership. Each avers timely steps taken to protect and enforce its liens, which action, it is urged, is sufficient, even under the Louisiana law, to prevent a Receiver from participating in the sale proceeds, citing International Harvester Co. of America v. Union Irr. Co., 150 La. 405, 90 So. 741 (1922).

If the State law controls, as opponent contends, the motion must be denied, pending determination of facts not now appearing in the record, e. g., whether the movers acquiesced in or received benefits from the State receivership, the amount claimed by the Trustee, necessary for application of that law. But we hold that the issue here is controlled by Federal law.

The Ship Mortgage Act was intended to make private investment in shipping attractive, and the constitutional authority of Congress to give a valid mortgage preferred status and to provide for the enforcement of its lien in admiralty has been upheld. The Thomas Barlum, 293 U.S. 21, 55 S.Ct. 31, 79 L.Ed. 176 (1934). See Gilmore & Black, The Law of Admiralty, pp. 568–570. Original jurisdiction to enforce the lien is vested exclusively in the District Courts of the United States. 46 U.S.C. § 951; *The Thomas Barlum*, supra.

We are concerned with a Federal statute and a contract to which the United States is a party. The Federal law, and not the State law, should be determinative of the issue here.

The statute provides:

"(b) Upon the sale of any mortgaged vessel by order of a district court of the United States in any suit in rem in admiralty for the enforcement of a preferred mortgage lien thereon, all preexisting claims in the vessel, including any possessory common-law lien of which a lienor is deprived under the provisions of section 952 of this title, shall be held terminated and shall thereafter attach, in like amount and in accordance with their respective priorities, to the proceeds of the sale; except that the preferred mortgage lien shall have priority over all claims against the vessel, except (1) preferred maritime liens, and (2) expenses and fees allowed and costs taxed, by the court." 46 U.S.C. §§ 953(b)

Thus, the lien of the preferred ship mortgage is paramount to all claims, and the mortgagee's priority on the proceeds of the sale of the vessel is made subordinate to only the preferred maritime lien, defined as a lien arising prior in time to the recording and endorsement of the preferred mortgage, or a lien for damages arising out of tort, for wages of a stevedore, when employed directly by the owner, operator, master, ship's husband, or agent of the vessel, for wages of the crew, for general average, and for salvage and "expenses and fees allowed, and costs taxed by the Court."

The opponent does not claim a preferred maritime lien, or, for that matter, any type of maritime lien. His claim for receivership costs can only be classed as nonmaritime.

An Admiralty Court cannot create a maritime lien. The Lottawanna, 21 Wall. 558, 88 U.S. 558, 22 L. Ed. 654. Maritime liens are *stricti juris* and cannot be extended argumentatively or by analogy or inference. Osaka Shosen Kaisha v. Pacific Export Lumber Co., 260 U.S. 490, 43 S.Ct. 172, 67 L.Ed. 364. The nature of maritime liens, even those firmly established by statute and time, requires service to the ship if premised on contract. Peterson v. SS Wahcondah, 216 F.Supp. 642, 644 (E.D.La. 1963) and authorities cited therein.

Historically, under the general maritime law, maritime liens have been given preference over secured nonmaritime claims arising prior or subsequent to the maritime lien on the basis of their attachment to the vessel itself, while other claims are not so derived. United States v. Flood, 247 F.2d 209 (1st Cir., 1957). Even a lien with such dignity as a Federal tax lien has been declared nonmaritime and denied priority over maritime liens as well as a subsequently recorded preferred ship mortgage. United States v. Flood, supra; United States v. Jane B. Corporation, 167 F.Supp. 352 (D. Mass., 1958); Gulf Coast Marine Ways, Inc. v. The J. R. Hardee, et al., 107 F. Supp. 379 (S.D.Texas, 1952).

The Trustee's claim might succeed if the receivership costs fall within the purview of expenses, fees and costs referred to in Section 953(b) (2). But, they do not. Priority over the mortgage lien is only contemplated for the expenses, fees and costs incident to the foreclosure proceedings and incurred therein on behalf of the ship after its seizure and in the judicial administration of the fund by the custodial court. See New York Dock Co. v. The Poznan, et

al., 274 U.S. 117, 47 S.Ct. 482, 71 L.Ed. 955 (1927); Empressa Nacional "Elcano" De La Marine Mercante v. The M/V Tropicana, et al., 252 F.Supp. 399 (E.D.La., 1965); Roy v. M/V Kateri Tek, et al., 238 F.Supp. 813 (E.D.La., 1965).

The United States is entitled to a distribution of $34,936.11 from the fund and Hunt Tool Company to $20,100.76. Trustee Owen will take nothing.

The Motion is granted. The Clerk will enter judgment accordingly.