**NATIONAL BANK OF NORTH AMER-ICA, Plaintiff,**

v.

**S. S. OCEANIC ONDINE et al., Defendants.**

**Civ. A. No. 69-G-53.**

United States District Court,
S. D. Texas,
Galveston Division.

April 7, 1971.

Edward W. Watson, of Eastham, Watson, Dale & Forney, Galveston, Tex., for plaintiff.

Anthony J. P. Farris, U. S. Atty., and Steve Rice, Asst. U. S. Atty., Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

NOEL, District Judge.

In this proceeding to foreclose a preferred ship mortgage, the United States has intervened to assert a claim for withholding and Federal Insurance Contributions Act taxes in the amount of $44,911.10 with respect to certain seamen's wages. These wages were never paid, and became the basis of a net wage claim filed earlier in this proceeding. This wage claim was voluntarily dismissed, such dismissal having been allowed by the Court over opposition. National Bank of North America v. S.S. Oceanic Ondine, C.A. 69-G-53 (S.D.Tex., November, 1970).[1]

In substance, the Government argues that it is the assignee of the taxed portion of the wages and is therefore entitled to enjoy preference over the preferred ship mortgage. By casting itself not as tax collector but as wage assignee, the Government would benefit by the high priority accorded wage claims under the Ship Mortgage Act, 46 U.S.C. §§ 911-984, which is a higher priority than that accorded to taxes. The issue thus reduces itself to whether the Government's claim is for taxes or wages.

---

1. This order was based on the view that the Government, asserting its tax claim, could not successfully resist the voluntary dismissal of separate and independent net wage claims on the theory that some fortuitous advantage to the Government might thereby be lost. Expressly reserved was the issue now presented, to wit: the priority of the tax claim.

The Government's opposition to the prior dismissal was based upon P. C. Pfeiffer Company v. The Pacific Star, 183 F.Supp. 932 (E.D.Va.1960), in which the District Court, while disbursing seamen's wages, also directed payment of the withholding and F.I.C.A. taxes. This action was affirmed as proper on the narrow ground that the tax "consisted of that part of the wages by law allocated to the Government as and when the money was paid." Marine Midland Trust Company v. United States, 299 F.2d 724 (4th Cir. 1962). The propriety of the *Pfeiffer* procedure was never presented for consideration in the instant case because the wages were never paid from the registry, the claim for same having been dismissed.

Although no authority directly on point has been cited, the wage assignment theory has been rejected by courts in analogous contexts. See W. T. Plumb, Jr., Federal Liens and Priorities, 77 Yale L.J. 228, 275 (1967). The wage vis-a-vis tax dichotomy has been rather fully developed in litigation concerning construction performance or payment bonds. Several cases have dealt with the issue of whether a surety is liable to the United States for withholding taxes under the terms of a surety's bond requiring the surety to pay wages owed by a contractor to its employees. It is well settled that money due to the United States from a defaulting contractor as withholding and F.I.C.A. taxes, although calculated by the amount of wages, is "owing as taxes and not as wages." General Casualty Company of America v. United States, 205 F.2d 753, 755 (5th Cir. 1953); United States v. Zschach Construction Company, 110 F.Supp. 551 (E.D. Okla. 1953), aff'd 209 F.2d 347 (10th Cir. 1954); United States v. Crosland Construction Company, 217 F.2d 275 (4th Cir. 1954).[2]

In United States Fidelity & Guaranty Company v. United States, 201 F.2d 118, 120 (10th Cir. 1952), also a construction bond case, the Government contended that its withholding tax lien succeeded to the status of wages by operation of law. Rejecting this argument, the Court stated:

. . . . it seems clear that when an employer withholds the tax from an employee's wage and pays him the balance the employee has been paid in full. He has received his full wage. Part of it has gone to pay his withholding tax and the balance he has. The employer has discharged his contractual obligation to pay the full wage. Thereafter there remains only his liability for the tax which he has collected. *That is a tax liability for*

*which he alone is liable to the Government as for any other taxes which he may owe.* (emphasis added)

In another such case which this Court finds particularly persuasive, United States v. Seaboard Surety Company, 201 F.Supp. 630, 635 (N.D. Tex. 1961), Chief Judge Estes rejected the wage assignment theory:

The court does not subscribe to plaintiff's theory that the United States of America is in a position analogous to an assignee of wages. The tax indebtedness arose by virtue of federal statute and not from any contract of assignment of the parties.

In yet another context, the United States Supreme Court has spoken close to point. Central Bank v. United States, 345 U.S. 639, 73 S.Ct. 917, 97 L.Ed. 1312 (1953), involved a ship repair concern (Graham Company) which contracted to do work for the Navy, and, to secure financing, assigned the proceeds of the contract to plaintiff bank. This assignment was made pursuant to the Assignment of Claims Act of 1940, which protected the assigned proceeds from set-off for claims asserted by the United States against the assignor "arising independently of the contract." The contract was terminated by reason of the contractor's defalcation, which consisted of failure to remit federal withholding and unemployment taxes withheld from employees. The Government sought to set off this amount against the contract proceeds due to plaintiff. In holding this impermissible, the Court pointed out that "(t)he requirement that Graham withhold taxes from the 'payment of wages' to its employees and pay the same over to the United States did not arise from the contract. The requirement is squarely imposed by . . . . . the Internal Revenue Code. Without a government contract Graham would owe the statutory duty to pay over the taxes

---

2. The Government would distinguish the construction bond cases on the ground that the contractors there withheld the taxes, whereas the shipowner in the instant case never paid the wages which give rise to the tax, nor withheld same. This factual difference does exist, but does not diminish the light which those cases cast on the difference between wages and withholding/F.I.C.A. taxes.

due, just as it would to pay its income tax on profits earned."

 Similarly, the Government's claim in the instant case derives from the employer's statutory obligation to collect and pay over the tax, not from a rather hypothetical partial assignment of gross wages.[3] As such, the claim is for a tax, not a wage. This settles the matter of priority.

 The Ship Mortgage Act clearly provides that "the preferred mortgage lien shall have priority over all claims against the vessel, except (1) preferred maritime liens, and (2) expenses and fees allowed and costs taxed, by the court." 46 U.S.C. § 953(b). A tax claim is not among those items enumerated by the statute as preferred maritime liens, 46 U.S.C. § 953(a), and it is well settled that such a claim will not support a maritime lien. United States v. Flood, 247 F.2d 209 (1st Cir. 1957); United States v. Jane B. Corporation, 167 F.Supp. 352 (D.C.Mass.1958); The J. R. Hardee, 107 F.Supp. 379 (S.D. Tex.1952); see generally Gilmore and Black, The Law of Admiralty § 9–73 et seq. (1957).

The clear intention of the Ship Mortgage Act of 1920 was to enhance the security of those who hazard their capital funds on the merchant marine. Detroit Trust Company v. The Thomas Barlum, 293 U.S. 21, 39, 55 S.Ct. 31, 79 L.Ed. 176 (1934). Toward this end, Congress rather specifically identified those categories of claims which would prime the mortgage. In so doing, it included wage claims but did not include federal taxes. Before this Court undertakes to elevate the latter, it should be on more compelling authority than the assertion that certain federal taxes are actually crewman's wages.

Accordingly, it is held that the tax claim here in issue is not in the nature of an assigned wage claim, and therefore does not prime the preferred ship mortgage. The mortgage forthwith shall submit a proposed order consistent herewith, after approval as to form by opposing counsel. The Clerk shall send copies of this Memorandum and Order to all counsel.

---

3. The fact that the dismissed complaints filed by wage claimants prayed that the difference between the net and gross wage be paid to the United States, or that certain informal agreements may have existed between the Internal Revenue Service and the wage claimants, cannot, of course, abridge the mortgagee's rights under the Ship Mortgage Act.